Argued and submitted March 10, 2015; convictions on Counts 2, 3, and 4 reversed and remanded for entry of a judgment of conviction for one count of first-degree sexual abuse; remanded for resentencing; otherwise affirmed November 30, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

QUANDARY NELSON,
aka Quandry Nelson,
aka Quandray Jamon Nelson,
*Defendant-Appellant.*

Multnomah County Circuit Court
070431678; A154617

386 P3d 73

Zachary Lovett Mazer, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Karla H. Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## ORTEGA, P. J.

Following a reversal and remand of defendant's convictions for first-degree sexual abuse and first-degree rape in *State v. Nelson*, 241 Or App 681, 251 P3d 240 (2011), *rev dismissed as improvidently allowed*, 354 Or 62 (2012), a jury found defendant guilty on retrial of two counts of first-degree sexual abuse, one count of third-degree sexual abuse, and one count of first-degree rape.[1] He appeals, challenging the convictions entered on each of those counts. First, he asserts that the state failed to prove that a witness who testified at his first trial was "unavailable" to testify at his second trial; accordingly, he asserts that the court's admission of that witness's testimony from the first trial into evidence at the second trial was prohibited by OEC 804(3), and violated his right to confront witnesses under Article I, section 11, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution. We reject that assignment of error without written discussion. Second, defendant claims that the trial court should have merged the guilty verdicts for two counts of first-degree sexual abuse and one count of third-degree sexual abuse into a single conviction for first-degree sexual abuse.

As we explain below, we agree with defendant that the court should have merged the guilty verdicts for sexual abuse into one conviction for first-degree sexual abuse because there was no evidence to support the trial court's determination that each instance of sexual contact was separated from the other instances of sexual contact by a "sufficient pause" in defendant's criminal conduct to afford defendant an opportunity to renounce his criminal intent. *See* ORS 161.067(3). In doing so, we also reject the state's threshold argument that the "antimerger" statute, ORS 161.067, does not apply in this case because defendant's three separate acts of sexual contact in a short amount of

---

[1] Defendant was also originally charged with one count of fourth-degree assault and one count of unauthorized use of a vehicle. The jury in his first trial convicted him of first-degree rape, first-degree sexual abuse, fourth-degree assault, and unauthorized use of a vehicle. He appealed the judgment of conviction, and we reversed and remanded his convictions for first-degree rape and first-degree sexual abuse because of an erroneous jury instruction. However, we affirmed his convictions for fourth-degree assault and unauthorized use of a vehicle, and those convictions are not at issue in this appeal.

time do not constitute the "same conduct or criminal episode" within the meaning of ORS 161.067(3). Accordingly, we remand for resentencing and otherwise affirm.

We recount the relevant background facts in the light most favorable to the state. *State v. Washington*, 355 Or 612, 614, 330 P3d 596 (2014) ("Because the jury found defendant guilty, we view the evidence presented at trial in the light most favorable to the state."). A grand jury indicted defendant of fourth-degree assault (Count 1), three counts of first-degree sexual abuse (Counts 2 through 4), second-degree sexual abuse (Count 5), first-degree rape (Count 6), and unauthorized use of a vehicle (UUV) (Count 7). A jury found defendant guilty of first-degree rape, first-degree sexual abuse, fourth-degree assault, and UUV. Defendant appealed, and we reversed and remanded his first-degree rape and first-degree sexual abuse convictions because the trial court failed to instruct the jury that it had to find that defendant had *knowingly* subjected the victim to forcible compulsion in order to convict him of those crimes. *Nelson*, 241 Or App at 689.

After remand, the evidence at defendant's second trial showed that defendant and the victim had begun dating in late 2006. In the early morning hours of April 7, 2007, the victim drove defendant, at his request, to a friend's apartment. When they arrived, defendant took the victim's phone, and she waited for him in the car. Eventually, she knocked on the door of the apartment because she wanted to go home. Defendant answered the door in an agitated state, and they argued as they returned to the victim's car. While seated in the car, defendant slapped the victim in the face with the back of his hand, breaking three of her bottom teeth. They returned to the victim's condominium, where her children were sleeping. Defendant refused to leave the victim alone, telling her that he could not let her out of his sight because she might call the police. She and defendant went to sleep for a couple of hours. After waking, defendant followed the victim around her home. Eventually she went into the bathroom. Defendant followed her in and closed and locked the door. While in the closed and locked bathroom, defendant reached down the victim's shirt and touched her bare breast,

exposed himself to the victim, grabbed her hand, forced her to touch his penis, and reached down the victim's pants and touched her vagina.[2] After those sexual contacts, defendant lowered the victim's pants and underwear and began penetrating her vaginally. The victim, who had been crying throughout the encounter, began crying harder. In the midst of the assault, he asked her if she wanted him to stop and the victim replies, "Yes." He laughed and continued penetrating her. After the assault, defendant apologized to the victim, saying he was a "piece of shit." He then left in the victim's car. The victim called the police on her way to the hospital.

Based on three separate instances of sexual contact[3] in the bathroom, defendant was charged with three counts of first-degree sexual abuse—Count 2 (touching of the victim's vaginal area), Count 3 (touching of the victim's breast), and Count 4 (forcing the victim to touch defendant's penis). Defendant was also charged with one count of first-degree rape. The jury found defendant guilty of first-degree sexual abuse on Counts 2 and 4, the lesser included offense of third-degree sexual abuse on Count 3, and first-degree rape. At sentencing, the parties disputed whether the three guilty verdicts on Counts 2, 3, and 4 should merge into a single conviction for first-degree sexual abuse under ORS 161.067(3).

Generally, "with respect to a single criminal episode, criminal conduct that violates only one statutory provision will yield only one conviction unless the so-called 'antimerger' statute, ORS 161.067, operates so as to permit the entry of multiple convictions." *State v. Reeves*, 250 Or App 294, 304, 280 P3d 994, *rev den*, 352 Or 565 (2012). That statute establishes three circumstances where the merger of multiple guilty verdicts based on the "same conduct or criminal episode" is precluded:

"(1)  When the same conduct or criminal episode violates two or more statutory provisions and each provision

---

[2] The victim's testimony as to the exact sequence of the three acts of sexual contact was equivocal.

[3] For purposes of first-degree sexual abuse under ORS 163.427, "[s]exual contact" is "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.305(6).

requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations.

"(2) When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims. ＊＊＊

"＊ ＊ ＊ ＊ ＊

"(3) When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent. Each method of engaging in deviate sexual intercourse as defined in ORS 163.305, and each method of engaging in unlawful sexual penetration as defined in ORS 163.408 [Unlawful sexual penetration in the second degree] and 163.411 [Unlawful sexual penetration in the first degree] shall constitute separate violations of their respective statutory provisions for purposes of determining the number of statutory violations."

ORS 161.067.

At sentencing, defendant argued that the guilty verdicts for sexual abuse[4] should be merged under ORS 161.067(3) into one conviction for first-degree sexual abuse because defendant's conduct violated the same statutory provision against the same victim and his repeated violations of the statutory provision were not separated "by a sufficient pause ＊＊＊ to afford [him] an opportunity to renounce the criminal intent."

The state argued that ORS 161.067(3) did not apply to defendant's sexual abuse guilty verdicts because each guilty verdict reflected different conduct by defendant and, therefore, constituted a separate "criminal episode." That is,

---

[4] Because the jury found defendant guilty of two counts of first-degree sexual abuse and one count of third-degree sexual abuse, we refer generically in this opinion to "sexual abuse" when referencing those three guilty verdicts.

the state asserted that defendant's separate actions did not constitute "the same conduct or criminal episode" so, as a threshold matter, the statute did not apply and the court could not merge defendant's guilty verdicts. Alternatively, the state asserted that, if ORS 161.067(3) applied, the court could find a "sufficient pause" based on evidence that the separate instances of sexual contact occurred in sequence, not simultaneously.

Ultimately, the court entered separate convictions for each of the guilty verdicts, explaining:

"If I look at the situation in the bathroom and that in particular, which several of these instances came out of, I find that there was a pause, that the defendant made a decision to continue, that the victim's testimony of what happened in the bathroom included putting his hand in her shirt, touching her vaginal area, turning her around physically, asking her if she wanted to do this, essentially, and saying no and yet continuing. All of these—all of those from that point I think clearly fall within that period of time and fall within the idea of separate instances."

On appeal, defendant argues that the state failed to carry its burden to show that there was a "sufficient pause" between violations. He maintains that the record lacks evidence to show that a sufficient pause separated each act because the record does not show the precise timing, order, or manner of the repeated violations, and, in the absence of such evidence, there was no basis for the court to determine that defendant had "an opportunity to renounce [his] criminal intent" between each violation. Defendant rejects any suggestion that the state simply had to show that defendant's acts occurred sequentially and not simultaneously.

In response, the state raises the threshold issue of whether ORS 161.067(3) applies at all in this case. In the state's view, ORS 161.067(3) is not triggered because defendant's separate acts of sexual contact did not constitute "the same conduct or criminal episode" as that phrase is used in the statute. The state maintains that, because the jury found defendant guilty of three counts of sexual abuse each based on "contact with a different body part," the three counts do not involve the "same conduct" under the statute. Further, the state argues that, even though defendant's separate

sexual contacts occurred close together in time, when the statutory text is properly construed, the phrase "criminal episode" in ORS 161.067(3) is irrelevant to the issue when the crime at issue involves "discrete acts."

As to the state's latter point that the legislature did not intend "criminal episode" in ORS 161.067(3) to apply to separate sexual contacts occurring close together in time, the state's argument flows from the premise that "crimes are defined in a variety of ways." The state provides examples of three categories of crimes. First, the state points to "result-oriented crimes" like assault, where some sort of physical injury must result from a defendant's act or acts. For example, fourth-degree assault occurs when someone "[i]ntentionally, knowingly or recklessly causes physical injury to another." *See* ORS 163.160(1). Therefore, according to the state, assault "is not defined by any particular action but by the cumulative effects of the defendant's actions." Second, the state references crimes that are defined by conduct, but have a "durational aspect." For example, second-degree kidnapping requires the specific act of taking a person to another place or secretly confining a person, but, according to the state, the crime continues the whole time the defendant is substantially interfering with the victim's personal liberty. *See* ORS 163.225. Third, and finally, the state points to crimes—like sexual abuse—that are "defined primarily or solely as an act." In those crimes, the offense is made up of "discrete instances of conduct."

The state posits that the first two categories of crimes—*i.e.*, "result-oriented crimes" and crimes with a "durational aspect"—are best described in terms of occurring during a "criminal episode." The state argues, however, that the third category of crimes—*i.e.*, crimes defined primarily or solely as an act—do not constitute a "criminal episode" but are "discrete instances of conduct." From the state's underlying premise that "crimes are defined in a variety of ways" the state concludes that, "because of the variety and types of crimes that potentially fall within the reach of ORS 161.067, it appears that the legislature used the phrase 'same conduct or criminal episode' simply to be inclusive." Based on that conclusion, the state further explains that the

legislature used "same conduct" to refer to "conduct crimes," and "criminal episode" to refer to only "result-based or cumulative crimes." We understand the state to essentially argue that, in deciding whether ORS 161.067(3) applies in a case where a "conduct crime" is at issue, such as here, the courts should evaluate only whether the defendant's criminal acts constituted the "same conduct." In contrast, courts should evaluate whether a defendant's criminal acts constitute a "criminal episode" under ORS 161.067(3) only when "result-oriented crimes" and crimes with a "durational aspect" are at issue.[5]

Finally, the state contends that the "sufficient pause" requirement in ORS 161.067(3) is context that supports its understanding of the intended meaning of "same conduct or criminal episode." In short, the state argues that the "analysis involving a sufficient pause for purposes of separating or combining repeated violations cannot be the same analysis used to determine whether conduct constitutes the same criminal episode," because "[t]o conclude otherwise would make the analysis circular and the application of subsection (3) duplicative and superfluous." That is, the state suggests that the question whether a defendant's criminal actions occurred during the same "criminal episode" would require the same analysis as whether, in an instance where a defendant has repeatedly violated the same statutory provision against the same victim, there was a sufficient pause for the defendant to renounce his criminal intent between the repeated violations.[6]

---

[5] The state argues in its answering brief that *State v. Parkins*, 346 Or 333, 211 P3d 262 (2009), reflects that approach. Nevertheless, the state acknowledged at oral argument that *Parkins* did not address the precise issue that it raises on appeal in this case. Thus, *Parkins* is inapposite to our analysis.

[6] Our recent decision in *State v. West-Howell*, 282 Or App 393, 401, 385 P3d 1121 (2016), undermines that assertion. Briefly, *West-Howell* involved a situation where the defendant sodomized the victim, then strangled her to unconsciousness, attempted to sexually penetrate her when she regained consciousness, and then sodomized her again. We rejected the defendant's contention that, "because there was no cessation in defendant's *overall criminal conduct*, the pause between the two acts of sodomy was insufficient in scope or quality to afford defendant the opportunity to renounce his criminal intent." *Id.* at 400 (emphasis in original). Accordingly, that case represents a situation where the analysis of whether defendant's criminal acts occurred during the same criminal episode is distinct from whether there was a "sufficient pause" between the repeated violations of the same statutory provision against the same victim.

Alternatively, the state argues that there was evidence of a sufficient pause between the three separate acts of sexual contact that supports the trial court's decision to enter separate convictions. In particular, the state relies on the victim's testimony that the touching was not simultaneous but rather sequential, and that one act of sexual contact ended before another began. The victim also indicated that the entire incident (the sexual contact and rape) occurred over a period of between 10 minutes and an hour.

We begin with the state's assertion that ORS 161.067 does not apply in this case because the nature of the crimes—separate acts of sexual contact occurring in an enclosed space in a short amount of time—requires us to evaluate only whether those acts constitute the "same conduct" for purposes of ORS 161.067(3). The state's argument presents a question of statutory construction that requires us to construe ORS 161.067(3) using the framework described in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), to determine the legislative intent. We examine the statute's text and context, and look to any helpful legislative history. *Id.* at 171. If, after reviewing the text of a statute in context and in light of useful legislative history, the legislative intent remains unclear, we may resort to "general maxims of statutory construction to aid in resolving the remaining uncertainty." *Id.* at 172. For the reasons that follow, we reject the state's proposed construction of ORS 161.067 because it does not reflect the legislative intent.

Because it provides important context, we briefly recount the history of the merger issue in Oregon's appellate courts that led the legislature to enact ORS 161.067, otherwise referred to as the "antimerger" statute.[7] Before

---

[7] Although ORS 161.067 is the current statutory provision governing merger, there is a long and complicated history involving that statute and "its not quite identical twin," *former* ORS 161.062 (1997) (*repealed by* Or Laws 1999, ch 136 § 1). *See State v. Crotsley*, 308 Or 272, 276 n 3, 779 P2d 600 (1989) (explaining that ORS 161.067 and *former* ORS 161.062 (1997) "derived from a common source"—Senate Bill (SB) 257 (1985)). In brief, the legislature voted in favor of an amended version of SB 257, in the form of House Bill (HB) 2331 (1985), which was approved and codified at *former* ORS 161.062 (1997). An almost identical proposal (also based on SB 257) was included in the omnibus "Crime Victims' Bill of Rights" ballot initiative filed with the Secretary of State in April 1985. That initiative was certified as Ballot Measure 10 (1986) and, after it was approved by the voters in November 1986, it became effective and was codified as ORS

the enactment of the antimerger statute in 1985, Oregon's appellate courts struggled with how to enter judgments when a single criminal episode might provide grounds for multiple convictions and sentences. *See State v. Nix*, 355 Or 777, 785, 334 P3d 437 (2014), *vac'd*, 356 Or 768, 345 P3d 416 (2015) (explaining the problem that ORS 161.067 was meant to address); *see also* David Lowell Slader, *The Lessons of Merger's Lost Decade*, 18 Willamette L Rev 219 (1982) (examining the development in Oregon of judicially created rules to address circumstances where a single criminal episode provided grounds for multiple convictions and sentences).

In 1971, the Supreme Court identified the "merger" problem and described the issue as whether, when a person is charged and found guilty of two crimes committed in the "same course of conduct," the "legislature intended to allow the state to convict for both offenses." *State v. Woolard*, 259 Or 232, 235, 484 P2d 314 (1971). In *Woolard*, the court took the position that the answer to that question was a matter of legislative intent. 259 Or at 237-38. Unfortunately, there was a dearth of expressed legislative intent in the criminal statutes on whether certain crimes should "merge." Accordingly, the appellate courts were left to divine legislative intent on a subject about which the legislature had done little to communicate its intentions. *See State v. Linthwaite*, 52 Or App 511, 525, 628 P2d 1250 (1981), *aff'd in part and rev'd in part*, 295 Or 162, 665 P2d 863 (1983) ("We reiterate that legislative intent in these cases is, at best, unclear, and, at worst, non-existent. Trial and appellate courts have been struggling with these questions for a decade or more.") In the face of legislative silence, the Supreme Court applied "the principle of lenity" throughout the 1970s and into the early 1980s to conclude that, when legislative intent was unclear on the matter of merger, doubts should be resolved in favor of

---

161.067. Both statutory provisions coexisted until 1999, when the legislature repealed *former* ORS 161.062 (1997). Because *former* ORS 161.062 (1997) and ORS 161.067 are substantively identical, for ease of reference, we refer throughout this opinion to ORS 161.067 as the antimerger statute—even when referring to legislative history that technically relates to *former* ORS 161.062 (1997). *See State v. Nix*, 355 Or 777, 785, 334 P3d 437 (2014), *vac'd*, 356 Or 768, 345 P3d 416 (2015) (relying on legislative history of *former* ORS 161.062 (1997) to evaluate issue requiring interpretation of ORS 161.067).

the defendant. *See State v. Linthwaite*, 295 Or 162, 179, 665 P2d 863 (1983) (applying the "principle of lenity" adopted in *State v. Welch*, 264 Or 388, 505 P2d 910 (1973)).

Against that backdrop, the Oregon District Attorneys' Association and the Oregon Criminal Defense Lawyers Association worked towards providing some clarity to the courts by proposing legislative solutions. Although initial attempts during the 1979, 1981, and 1983 legislative sessions failed, the effort eventually achieved success during the 1985 legislative session in House Bill (HB) 2331 (1985).[8] The legislative history indicates that the purpose of the legislation was to

> "address two related problems which have caused criminal law practitioners and the courts consternation for quite some time. The first issue is how many judgments of conviction may a court enter when a criminal defendant, has, during a single episode, violated several statutes, injured several victims or violated the same statute against the same victim several times. The second issue concerns * * * when a court may sentence a defendant convicted of multiple crimes to consecutive sentences."

Staff Measure Analysis, Senate Committee on Judiciary, SB 257, 1985. Proponents of the legislation explained that, given the state of the case law on the issue of merger, the legislature needed to provide guidance as to when courts should "impose multiple convictions arising out of the same criminal episode." Tape Recording, House Committee on Judiciary, Subcommittee 1, HB 2331, May 27, 1985, Tape 676, Side A (statement of Oregon District Attorneys' Association representative Pete Sandrock). And, as the Supreme Court explained in *State v. Crotsley*, 308 Or 272, 276-77, 779 P2d 600 (1989),

> "[t]he proponents of [ORS 161.067] clearly intended that criminal records accurately reflect all crimes actually committed and that a person who commits multiple crimes by the same conduct or during the same criminal episode should have a criminal record reflecting each crime

---

[8] As noted, 282 Or App at 436 n 7 HB 2331 was chosen as the "legislative vehicle" to address merger, and the legislative history of HB 2331 includes discussions related to SB 257.

committed rather than only a single conviction which would not accurately portray the nature and extent of that person's conduct."

Nevertheless, as the Deputy Attorney General testified, the legislation "is not merely a reflection of the policy judgments of the prosecution community. It is a reasonable compromise, borne of the legislative process, that accounts for the competing public interests that are implicated in the criminal justice system." Exhibit A, House Committee on Judiciary, Subcommittee 1, HB 2331, May 27, 1985 (written testimony of Oregon Deputy Attorney General, William F. Gary).

Within that historical and legislative context, the legislature enacted the "antimerger" statute. As noted, ORS 161.067, provides:

"(1)   When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations.

"(2)   When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims. * * *

"* * * * *

"(3)   When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent. Each method of engaging in deviate sexual intercourse as defined in ORS 163.305, and each method of engaging in unlawful sexual penetration as defined in ORS 163.408 and 163.411 shall constitute separate violations of their respective statutory provisions for purposes of determining the number of statutory violations."

The state's argument on appeal requires us to examine the meaning of "same conduct or criminal episode" within the context of ORS 161.067. Generally, the text and context of the statute are the "best indications" of the legislature's intent. *State v. Walker*, 356 Or 4, 13, 333 P3d 316 (2014). To determine the meaning of a statute or a particular statutory phrase, we generally assume that the legislature intended the statute to be read in a manner consistent with settled rules of grammar and syntax. *See, e.g., Cuff v. Department of Public Safety Standards*, 345 Or 462, 470, 198 P3d 931 (2008). In ORS 161.067, the legislature used the disjunctive "or" in "same conduct or criminal episode." Although the legislature may use "or" in "either an exclusive or an inclusive sense," *State v. Pipkin*, 354 Or 513, 523, 316 P3d 255 (2013), we infer from the context that, in ORS 161.067, the legislature intended to use "or" in the inclusive sense. *See Burke v. DLCD*, 352 Or 428, 435-36, 290 P3d 790 (2012) (describing the exclusive and inclusive uses of "or"). That is, the legislature intended that ORS 161.067 would apply when the same conduct, the same criminal episode, or both, fit one of the three circumstances listed in ORS 161.067(1), (2), or (3).

*First*, there is nothing "clear" in the context of the statute that "or" was intended by the legislature in the exclusive sense. *See Burke*, 352 Or at 437 (providing the example that, "[i]f a person is told that, 'on Thursday, Mary will be in Eugene or in Boston,' it is clear that the 'or' is being used in its exclusive sense"). Rather, the more natural reading of "same conduct or criminal episode" in ORS 161.067 is that "or" is intended in the inclusive sense.

*Second*, nothing in the text of ORS 161.067 supports the state's claim that the legislature intended "same conduct" to apply exclusively to a certain category of crimes, and "criminal episode" to apply exclusively to another category of crimes. Actually, that construction would appear to require us to add to the words that the legislature enacted into law, which we are prohibited from doing. *See* ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted or to omit what has been inserted[.]"). That is, it is unlikely that,

if the legislature had intended the distinction that the state urges, it would not have explicitly said so in the text of the statute.

*Finally*, the state's proposed construction of the statute would appear to render the last sentence of ORS 161.067(3) superfluous. *See Crystal Communications, Inc. v. Dept. of Rev.*, 353 Or 300, 311, 297 P3d 1256 (2013) (noting that, as a general rule, we construe a statute in a manner that gives effect, if possible, to all its provisions). Again, ORS 161.067(3) provides:

> "When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent. *Each method of engaging in deviate sexual intercourse as defined in ORS 163.305, and each method of engaging in unlawful sexual penetration as defined in ORS 163.408 and 163.411 shall constitute separate violations of their respective statutory provisions for purposes of determining the number of statutory violations.*"

(Emphasis added.) The emphasized text explicitly provides that "[e]ach method" of deviate sexual intercourse and unlawful sexual penetration "shall constitute separate violations" of the respective statutory provisions. Borrowing the state's framework, first-degree unlawful sexual penetration is a crime like first-degree sexual abuse that is defined by "discrete acts." *See* ORS 163.411. So, under the state's proposed construction of ORS 161.067, if a defendant was charged and found guilty of multiple counts of first-degree unlawful sexual penetration related to acts that occurred in an enclosed bathroom over a period of seconds or minutes, the defendant's guilty verdicts would not merge because the defendant's discrete acts of unlawful sexual penetration would not constitute the "same conduct" under ORS 161.067(3). If that is the result the legislature intended, why did it include the last sentence of ORS 161.067(3)? The

legislature's need to explicitly spell out that "[e]ach method" of unlawful sexual penetration constituted "separate violations" of ORS 163.411 "for purposes of determining the number of statutory violations" is unnecessary if the legislature intended that each "discrete act" of unlawful sexual penetration was not subject to merger under ORS 161.067.

We also note that nothing in the legislative history explicitly supports the state's proposed construction of the statute. There is no indication that the legislature intended "same conduct" to be applied only to crimes that involved "discrete acts" and "criminal episode" to be applied only to crimes that were "result based" or have a "durational aspect." During discussions of SB 257 and HB 2331, witnesses testifying in support of the legislation and the legislators themselves used the phrases "same conduct" and "criminal episode" interchangeably without any attempt to make the distinction that the state urges on appeal. *See generally* Minutes, House Committee on Judiciary, Subcommittee 1, May 27, 1985, 2-4; Minutes, House Committee on Judiciary, Subcommittee 1, May 29, 1985, 11. And, to the extent that one of the reasons for the legislation was to ensure "that a person who committed multiple crimes by the same conduct or during the same criminal episode should have a criminal record reflecting each crime committed," that legislative policy choice appears to have been covered by the "sufficient pause" provision in ORS 161.067(3).

Having rejected the state's "threshold" argument that ORS 161.067 does not apply, we proceed with defendant's assignment of error. To that end, the state does not argue that, if ORS 161.067 does apply, defendant's discrete acts of sexual contact in this case did not occur in the same "criminal episode." *See, e.g., Crotsley*, 308 Or at 278 (it is undisputed that a defendant who threatened a 14-year-old girl with a knife and forcibly subjected her to sexual penetration and several acts of deviate sexual intercourse "plainly engaged in a single criminal episode"). Accordingly, we do not need to precisely define the contours of "criminal episode" in ORS 161.067, and instead we proceed to defendant's argument that, under ORS 161.067(3), the trial court erred when it concluded that there was a "sufficient pause"

between each of defendant's repeated violations of the sexual abuse statutes.

We have interpreted "sufficient pause," as that term is used in ORS 161.067(3), to mean "a temporary or brief cessation of a defendant's criminal conduct that occurs between repeated violations and is so marked in scope or quality that it affords a defendant the opportunity to renounce his or her criminal intent." *State v. Huffman*, 234 Or App 177, 184, 227 P3d 1206 (2010). Moreover, for repeated violations to be separately punishable, "'one crime must end before another begins.'" *Id.* at 185 (quoting *State v. Barnum*, 333 Or 297, 303, 39 P3d 178 (2002), *overruled on other grounds by State v. White*, 341 Or 624, 147 P3d 313 (2006)). "Thus, to support the entry of multiple convictions for the same offense under ORS 161.067(3), one crime must end before another begins *and* each crime must be separated from the others by a sufficient pause in the defendant's criminal conduct to afford him an opportunity to renounce his criminal intent." *State v. West-Howell*, 282 Or App 393, 397-98, 385 P3d 1121 (2016) (emphasis in original).

The state, as the party asserting that defendant's conduct violating ORS 163.427 is "separately punishable" for purposes of ORS 161.067(3), bears "the burden of adducing legally sufficient evidence of the requisite 'sufficient pause.'" *State v. McConville*, 243 Or App 275, 284, 259 P3d 947 (2011). We are bound by the trial court's findings of fact—including the duration of a pause and what a defendant did during a pause—if there is constitutionally sufficient evidence in the record to support those findings. *State v. Watkins*, 236 Or App 339, 345, 236 P3d 770, *rev den*, 349 Or 480 (2010). We review for legal error a trial court's ultimate ruling that a pause was sufficient to afford the defendant an opportunity renounce his criminal intent. *State v. Reed*, 256 Or App 61, 63, 299 P3d 574, *rev den*, 353 Or 868 (2013).

Defendant contends that his guilty verdicts for sexual abuse must merge because the record lacks evidence of the precise timing, order, or manner of defendant's repeated violations of the same statute against the victim. He argues that it is mere speculation that, "because each count required a distinct physical motion, a sufficient pause

must necessarily have separated each act." He contends that there is no evidence whether there were pauses between each act of sexual contact, how long those pauses may have been, or whether each contact occurred in rapid succession or even simultaneously.

The state claims that evidence in the record supports the trial court's conclusion that

> "there was a pause, that the defendant made a decision to continue, that the victim's testimony of what happened in the bathroom included putting his hand in her shirt, touching her vaginal area, turning her around physically, asking her if she wanted to do this, essentially, and [her] saying no and yet continuing. All of those—all of those from that point I think clearly fall within that period of time and fall within the idea of separate instances."

In particular, the state points to the victim's description of the abuse—about how defendant's separate sexual contacts with different body parts were not simultaneous, but rather sequential, and that one act of sexual contact ended before another began. The victim also testified that defendant's actions in the bathroom "felt like forever"—sometime between 10 minutes and an hour. The state also points out that defendant paused while raping the victim and asked if she wanted him to stop, but laughed and continued when she said, "Yes."

Before we examine whether the evidence is sufficient to support the trial court's determination of a "sufficient pause," we note that we are limited to examining whether there was a sufficient pause between the acts of *sexual contact* that led to the guilty verdicts for *sexual abuse*. That is, the state's reliance on—and the trial court's reference to—defendant's actions during his rape of the victim are not material to our analysis.

We have not analyzed the "sufficient pause" issue in the exact context presented in this appeal—*i.e.*, sequential sexual contacts with different body parts. Recently, we upheld a trial court's determination that a sufficient pause existed between sexual crimes when the defendant engaged in other nonsexual criminal conduct between the sexual crimes. *See West-Howell*, 282 Or App at 399. In that case,

we looked to our decisions addressing merger in the context of convictions for multiple counts of assault for guidance. *Id.* We do the same here. *Cf. State v. Cale*, 263 Or App 635, 641, 330 P3d 43 (2014) (using merger analysis in assault cases for guidance in analyzing merger of multiple guilty verdicts of using a child in the display of sexually explicit conduct, ORS 163.670).

As a starting point, we have held that merger of guilty verdicts for assault is proper in cases where the record reflects a "continuous and uninterrupted attack of a victim." *State v. Campbell*, 265 Or App 132, 139, 333 P3d 1220 (2014). We have also held that a trial court errs when it fails to merge guilty verdicts in the absence of evidence from which a trier of fact could conclude that one crime ended before the next began. *See State v. Glazier*, 253 Or App 109, 118, 288 P3d 1007 (2012), *rev den*, 353 Or 280 (2013) (the trial court erred where "there was no evidence of a temporal break between defendant's assaultive acts such that a trier of fact could find that one assault had ended before another began"); *see also State v. Sanders*, 185 Or App 125, 128, 57 P3d 963 (2002), *adh'd to as modified on recons*, 189 Or App 107, 74 P3d 1105 (2003), *rev den*, 336 Or 657 (2004) ("The state does not suggest that there is any direct evidence of a pause in defendant's conduct of any measurable duration [but] argues that a pause may be inferred from the fact that defendant decided to hit the victim in the head and from the fact that the victim had enough time to hold up her arm to ward off the blow.").

For example, in *Campbell*, a jury found the defendant guilty of multiple counts of assault for shooting the victim several times with a BB gun while they sat inside the victim's truck. 265 Or App at 135. When the victim attempted to run from the truck, the defendant pulled her back before she could escape, and continued the assault. *Id.* On appeal, we determined that the defendant's guilty verdicts must merge because there was no evidence from which a reasonable factfinder could have concluded that defendant's conduct was interrupted by a "significant" event. We noted that the entire violent episode occurred in the cab of the victim's truck, without a pause in the defendant's aggression. *Id.* at 138-39.

In contrast, in *State v. King*, 261 Or App 650, 656, 322 P3d 597 (2014), we upheld the trial court's decision to enter separate convictions for multiple counts of assault because "something of significance" had occurred between the assaults. The defendant in that case punched the victim. *Id.* at 651. Then, the victim managed to temporarily subdue the defendant by wrestling him to the ground. However, the defendant broke free and continued beating the victim with the help of a friend. *Id.* A jury found the defendant guilty of two counts of assault, which the trial court declined to merge into a single conviction because it concluded that the assaults were separated by a sufficient pause. In particular, the trial court concluded that the defendant could have stopped but, instead, chose to reenter the fray, and commit a second assault. We affirmed, explaining that

> "the evidence shows that defendant initially assaulted the victim by punching him, and that assault ended with the victim getting the better of defendant, restraining defendant on the ground. Rather than renounce his criminal intent at that point, however, defendant instead joined with his friend in a two-on-one assault on the victim, and hit the victim with a bar stool. In those circumstances, we conclude that the trial court's finding that there was a sufficient pause between the assaults for defendant to have renounced his criminal intent is supported by evidence in the record."

*Id.* at 656.

Distinguishing between *Campbell* and *King*, we concluded in *West-Howell* that "something of significance" happened between the defendant's separate acts of sodomy in the form of other criminal conduct that was not sexual in nature, *i.e.*, the defendant strangled the victim into unconsciousness between acts of sodomy. 282 Or App at 401.

Here, we agree with defendant that the state failed to adduce sufficient evidence from which a trier of fact could conclude that there was a sufficient pause between the three acts of sexual contact constituting sexual abuse. The evidence does not support a nonspeculative inference that "something of significance" occurred between the defendant's sequential acts of touching; rather, this is a case like

*Campbell* where the entire episode occurred in a confined space without interruption by any "significant" event and without a pause in defendant's aggression. *See Cale*, 263 Or App at 641 (concluding that, where the only evidence of timing of sexually explicit photos of a child was that the defendant had taken three unlawful photos within one minute and 16 seconds, the "mere passage of that brief time" was insufficient evidence that the defendant had paused his exploitative conduct). This is a case where the record demonstrates only that defendant's acts occurred in sequence over a brief period of time. There is nothing in the record that would allow a nonspeculative inference that each crime was separated from the others by a sufficient pause in defendant's conduct to afford him an opportunity to renounce his criminal intent. Rather, insofar as the record reveals, the entire violent episode at issue occurred in the confined space of the bathroom, without interruption by any "significant" event, and without a pause in the defendant's aggression. *See Campbell*, 265 Or App at 138-39; *see also Sanders*, 185 Or App at 130 (instructing the trial court to merge guilty verdicts on two counts of assault where "[t]here is no other evidence [beside the mere passage of time] that defendant's assault of the victim's legs and torso 'ended' before he attempted to hit [the victim] in the head").

Convictions on Counts 2, 3, and 4 reversed and remanded for entry of a judgment of conviction for one count of first-degree sexual abuse; remanded for resentencing; otherwise affirmed.