Argued and submitted June 20, 2019; convictions on Counts 1 and 7 reversed and remanded for entry of conviction for one count of unlawfully taking wildlife, convictions on Counts 3 and 8 reversed and remanded for entry of conviction for one count of unlawfully taking wildlife, remanded for resentencing, otherwise affirmed June 3, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DAVID JOHN BARTON,
*Defendant-Appellant.*

Douglas County Circuit Court
17CR25447; A166775

468 P3d 510

Defendant appeals a judgment of conviction for two counts each of taking and possessing two different buck deer in violation of the wildlife laws: one buck in 2016 (Counts 1 and 7) and one buck in 2015 (Counts 3 and 8). See ORS 498.002(1) ("No person shall angle for, take, hunt, trap or possess, or assist another in angling for, taking, hunting, trapping or possessing any wildlife in violation of the wildlife laws or of any rule promulgated pursuant thereto."). On appeal, defendant contends that the trial court erred when it concluded that the taking counts (Counts 7 and 8) did not merge with the possession counts (Counts 1 and 3). Specifically, defendant contends that the trial court erred when it ruled that ORS 161.067 precluded merger of Count 1 with Count 7 for the 2016 buck and merger of Count 3 with Count 8 for the 2015 buck. *Held*: The trial court erred when it ruled that ORS 161.067 precluded merger of Counts 1 and 7 and Counts 3 and 8.

Convictions on Counts 1 and 7 reversed and remanded for entry of conviction for one count of unlawfully taking wildlife; convictions on Counts 3 and 8 reversed and remanded for entry of conviction for one count of unlawfully taking wildlife; remanded for resentencing; otherwise affirmed.

George William Ambrosini, Judge.

Sara F. Werboff, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

TOOKEY, J.

Convictions on Counts 1 and 7 reversed and remanded for entry of conviction for one count of unlawfully taking wildlife; convictions on Counts 3 and 8 reversed and remanded for entry of conviction for one count of unlawfully taking wildlife; remanded for resentencing; otherwise affirmed.

**TOOKEY, J.**

Defendant appeals a judgment of conviction for two counts each of taking and possessing two different buck deer in violation of the wildlife laws: one buck in 2016 (Counts 1 and 7) and one buck in 2015 (Counts 3 and 8). *See* ORS 498.002(1) ("No person shall angle for, take, hunt, trap or possess, or assist another in angling for, taking, hunting, trapping or possessing any wildlife in violation of the wildlife laws or of any rule promulgated pursuant thereto."); ORS 496.992(1) ("Except as otherwise provided by this section or other law, a violation of any provision of the wildlife laws, or any rule adopted pursuant to the wildlife laws, is a Class A misdemeanor if the offense is committed with a culpable mental state.").

On appeal, defendant raises three assignments of error, the first of which we reject without further discussion. With regard to defendant's second and third assignments of error, defendant contends that the trial court erred when it concluded that the taking counts (Counts 7 and 8) did not merge with the possession counts (Counts 1 and 3). Specifically, defendant contends that the trial court erred when it ruled that ORS 161.067 precluded merger of Count 1 with Count 7 for the 2016 buck and merger of Count 3 with Count 8 for the 2015 buck. For the reasons that follow, we agree with defendant, and conclude that the trial court erred when it ruled that ORS 161.067 precluded merger of Counts 1 and 7 and Counts 3 and 8. Accordingly, we reverse and remand Counts 1 and 7 for entry of conviction for one count of unlawfully taking wildlife, and we reverse and remand Counts 3 and 8 for entry of conviction for one count of unlawfully taking wildlife.

## I.  BACKGROUND

"We review the sentencing court's determination of whether to merge verdicts for errors of law," and "we state the facts underlying that ruling in the light most favorable to the state; that is, in the light most favorable to the trial court's conclusion that merger was not required." *State v. Oldham*, 301 Or App 82, 83, 455 P3d 975 (2019) (internal quotation marks and citations omitted). The following summary of historical facts is based on the testimony of the

state's main witness, Trooper Andrews, and the exhibits entered into evidence by the state; defendant did not present any evidence.

A.   *Historical Facts*

The investigation into defendant began on November 25, 2015, when Trooper Andrews of the Oregon State Police's Fish and Wildlife Division noticed some of defendant's Facebook posts on a black tail deer hunting page. Defendant posted a picture of a "four by four" buck deer "with a very unique antler configuration" and a comment that read, "snuck in on this odd fella[,] *** [h]e's still got some velvet on him."[1] Based on his training and experience, Andrews knew that "[d]uring the rifle season it would be very rare" for a buck to still have velvet on its antlers. Andrews continued to investigate defendant's Facebook profile and was able to identify defendant. Andrews also observed posts detailing defendant's hunting efforts with his wife during the 2015 deer hunting season. On October 7, 2015, defendant's wife had posted a picture of defendant in camouflage holding a scoped rifle to her Facebook profile and defendant commented, "gonna skin me a buck and throw it in my truck *** [a]nd girl, you're in luck because my lyrics don't suck."

Andrews's investigation into defendant's Facebook profile uncovered numerous photographs of black tail deer. On October 31, 2016, defendant posted a photograph of himself to his Facebook profile holding two freshly severed deer legs and "what appear[ed] to be some blood wiped on his face." Based on his training and experience, Andrews knew that "there are people in the hunting community that, after a fresh kill, take the blood of their animal and *** smear it on their face." Accordingly, Andrews "believe[d] that it was a picture *** taken relatively soon after the animal was taken." On November 11, 2016, defendant posted a photograph of a "four by six" buck skull that was hung up on a pressure treated post. Andrews believed that the deer had been killed "a couple of weeks" before the picture was taken,

---

[1] By way of example, a "four by four" buck's antlers have four countable points on the left side and four countable points on the right side. We use that terminology for counting points throughout this opinion in order to distinguish between the different bucks that were involved in this case.

because of the muscle, pink tissue, and cartilage on the skull.

On November 14, 2016, defendant posted another picture of the same "four by six" buck skull with the caption, "got this heavy horned four by six during rifle season," shot it "through the back of the neck [and the bullet came] out the front[,] *** [h]e was bedded down," I "slit his throat to seal the deal and killed [him in] late October." Based on the configuration of the antlers, Andrews believed that the buck in the picture from 2016 was a different buck than the buck in the pictures from 2015.

To further his investigation, Andrews conducted a query in the hunting license database to determine whether defendant had any deer tags for 2015, and 2016. Andrews discovered that defendant did not have any deer tags or a hunting license in 2015 or 2016 and could not lawfully take a deer in Oregon those years. Andrews found out where defendant's home was located in Douglas County, and Andrews began drafting an affidavit for a search warrant.

Andrews obtained a warrant to search defendant's home and property and executed it on March 19, 2017. Defendant was home, and Andrews read defendant the search warrant and read defendant his *Miranda* rights from a prepared card. Defendant confirmed that he understood his rights and agreed to talk with Andrews. Andrews showed defendant the pictures that he had copied from defendant's Facebook profile and explained to defendant that he was looking for evidence of the bucks that were depicted in the pictures.

Defendant initially denied unlawfully taking the bucks but, eventually, defendant provided Andrews with the antlers and skulls. Defendant admitted that he had unlawfully taken the "four by four" buck without a license or tag on November 1, 2015, and Andrews seized the skull and antlers of that buck. Upon further questioning, defendant also admitted that he had unlawfully taken the "four by six" buck without a license or tag on October 31, 2016, and Andrews seized the skull and antlers of that buck as well. No deer tags were attached to the skulls, and Andrews cited defendant for multiple wildlife violations.

B. *Procedural History*

Defendant was charged by information with eight counts of criminal wildlife violations under ORS 498.002 and ORS 496.992.[2] With respect to the 2016 "four by six" buck, Count 1 alleged that, on March 19, 2017, defendant unlawfully and knowingly possessed the 2016 four by six buck, and Count 2 alleged that he also violated the wildlife laws by knowingly possessing the 2016 buck without the proper tags on March 19, 2017. Count 7 alleged that, in an act constituting a common scheme or plan with Counts 1 and 2, defendant violated the wildlife laws by taking the 2016 buck without a valid hunting license or tag on October 31, 2016.

As to the 2015 "four by four" buck, Count 3 alleged that, on March 19, 2017, defendant unlawfully and knowingly possessed the 2015 buck, and Count 4 alleged that he also violated the wildlife laws by knowingly possessing the 2015 buck without the proper tags on March 19, 2017. Count 8 alleged that, in an act constituting a common scheme or plan with Counts 3 and 4, defendant violated the wildlife laws by taking the 2015 buck without a valid hunting license or tag on November 1, 2015.

In a bench trial, defendant was found guilty of unlawfully possessing a game mammal (Counts 1, 2, 3, and 4) and of unlawfully taking a game mammal (counts 7 and 8). As noted, Counts 1, 2, and 7 were related to the 2016 buck. Counts 3, 4, and 8 were related to the 2015 buck.

At sentencing, the state acknowledged that, under ORS 161.067, "Counts 1 and 2 should merge into one conviction and Counts 3 and 4 should merge into one conviction" because the two groups of charges were each based on defendant's unlawful possession of a buck on the same date.[3] However, as to Counts 7 and 8, the state argued that

---

[2] Defendant was also charged with counts relating to a 2014 buck (Counts 5 and 6). He was found not guilty on those counts.

[3] ORS 161.067 provides, in pertinent part:

"(1) When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations.

Count 7 for taking the 2016 buck should not merge with Counts 1 and 2 for possessing the 2016 buck, and that Count 8 for taking the 2015 buck should not merge with Counts 3 and 4 for possessing the 2015 buck.

The state argued that, under ORS 161.067(1), the taking and possession counts should not merge because defendant's conduct violated two or more statutory provisions and that each provision contained an element that the other did not. The state asserted that "the legislature did not intend to define a single crime in ORS 498.002" because "ORS 498.002 references violations of the wildlife laws and rules," and, "[w]ith this reference, ORS 498.002 specifically points to the Oregon Administrative rules developed by [the Oregon Department of Fish and Wildlife]." The state noted that OAR 635-065-0765 sets forth the legal restrictions for possessing game animals, whereas OAR 635-065-0015 sets forth the legal tag requirements for hunting game, and that violations of those administrative rules require proof of different elements.

The state also argued that, under ORS 161.067(3), the unlawful taking counts (Counts 7 and 8) should not merge with the respective possession counts (Counts 1 and 3) because defendant's taking of the bucks was not part of the same criminal episode as the possession of the bucks. The state contended that the possession crimes were separated by a sufficient pause, and that defendant had the opportunity to renounce his criminal intent after unlawfully taking

---

"(2) When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims. * * *.

"* * * * *

"(3) When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

The state did not argue that ORS 161.067(2) precluded merger of any of the guilty verdicts in this case because the State of Oregon was the only victim of the defendant's wildlife violations. *See* ORS 498.002(1) ("Wildlife is the property of the state.").

the bucks, but he chose to retain possession of the skulls for several months after he had killed the bucks. *See* ORS 496.004(16) (defining "take" as "to kill or obtain possession or control of any wildlife").

Defendant argued that Counts 1, 2, and 7 were all part of the same criminal episode, that Counts 3, 4, and 8 were all part of the same criminal episode, and that his conduct only violated a single statutory provision. Accordingly, defendant contended that ORS 161.067(1) did not preclude merger of Counts 2 and 7 into Count 1 for the violations involving the 2016 buck or preclude merger of Counts 4 and 8 into Count 3 for the violations involving the 2015 buck. Furthermore, defendant contended that merger was not precluded under ORS 161.067(3), because "the state *** failed to demonstrate that there was a pause between the act of killing of a buck, the act of taking possession of a buck, or any break in [defendant's] possession of a buck."

The trial court merged the guilty verdicts on Counts 1 and 2 into a single conviction on Count 1 for the unlawful possession of the 2016 buck. The trial court also merged the guilty verdicts on Counts 3 and 4 into a single conviction on Count 3 for the unlawful possession of the 2015 buck. The trial court further concluded, however, that the guilty verdict for Count 7 did not merge into Counts 1 and 2, and that the guilty verdict for Count 8 did not merge into Counts 3 and 4. The court explained:

> "With respect to Counts 7 and 8, in terms of the statutory scheme, including the merger statute, determining punishable offenses for violation of multiple, multiple statutory provisions, multiple victims or repeated violations.
>
> "In terms of [ORS 161.067(3)], the Court, and upon review, and actually the Court was the finder of fact in this case as well. So it's in a position to, the factual finder with the defendant having waived, waived a jury trial. The Court finds that this involves a different criminal episode and conduct, these two Counts from the, the other Counts.
>
> "Measures of different dates, a considerable passage of time. Also, in reviewing the facts, that there is also sufficient evidence to support a finding with respect to statutory provisions that the evidence supports the finding that the

crimes were separated from the other violations by a sufficient pause. And the defendant's criminal conduct afforded the defendant an opportunity to renounce the criminal intent.

"So, based upon the entire record, different episode and different conduct, sufficient pause in the conduct, and separate provisions, as well[,] *** [t]he Court finds that those two provisions do not merge."

Hence, the trial court made three conclusions in support of its ruling that the possession counts did not merge into the taking counts. First, the trial court concluded that defendant's acts were not part of the same criminal episode. Second, the trial court ruled that ORS 161.067(3) precluded merger, because defendant's taking of the bucks and possession of the bucks' remains were separated by a sufficient pause. Third, the trial court ruled that ORS 161.067(1) precluded merger because the act of taking a buck and the act of possessing a buck violated separate statutory provisions, which required proof of different elements. Accordingly, the trial court entered a judgment of conviction on Counts 1, 3, 7, and 8.

On appeal, defendant contends that the trial court's merger ruling was incorrect in all three respects. Defendant argues that ORS 161.067(3) did not prevent merger because his "conduct was part of the same criminal episode and was not separated by a sufficient pause," and that ORS 161.067(1) did not prevent merger because his "conduct violated only one statutory provision." The state argues that ORS 161.067(1) and (3) precluded merger "because [defendant] was convicted separately for killing and possessing each of those deer, his crimes with respect to each deer violated multiple statutory provisions, were not part of the same criminal episode, and were separated by a sufficient pause."

## II.  ANALYSIS

"In determining whether multiple violations of the law must merge, we look to the anti-merger statute, ORS 161.067, because, if the circumstances described in the statute do not exist, then the conduct or criminal episode results in a single conviction." *Oldham*, 301 Or App at 84 (internal

quotation marks omitted). As noted, the issue in this case is whether ORS 161.067(1) and (3) precluded merger.

Again, that statute provides, in pertinent part:

"(1) *When the same conduct or criminal episode* violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations.

"* * * * *

"(3) *When the same conduct or criminal episode* violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

ORS 161.067 (emphases added).

A.   *Same Conduct or Criminal Episode*

Because ORS 161.067(1) and (3) both require merger only if the violations were committed by the same conduct or during the same criminal episode, we begin by determining whether the trial court erred when it concluded that defendant's crimes were not part of the same criminal episode.

Two crimes are part of the same criminal episode if they are "cross-related," which means that "a complete account of each crime necessarily include details of the other." *State v. Witherspoon*, 250 Or App 316, 322, 280 P3d 1004 (2012) (internal quotation marks omitted).[4]

---

[4] Although *Witherspoon* involved analyzing the criminal episode test under ORS 131.505(4) to calculate the defendant's criminal history score using double jeopardy principles, its analysis is relevant here. 250 Or App at 321-22; *see* ORS 131.505(4) (defining "criminal episode" as "continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective"); *State v. Kayfes*, 213 Or App 543, 558, 162 P3d 308, *rev den*, 343 Or 690 (2007) (applying the definition of "criminal episode" under ORS 131.505(4) when conducting a merger analysis under ORS 161.067(3)).

In *Witherspoon*, we applied ORS 131.505(4) in the context of an episode of domestic violence that lasted for more than five hours. *Id.* at 318-19. During that time, the defendant had "grabbed [the victim's] hair and pulled her head back, aggravating a bulging disc in her neck, \* \* \* referr[ed] to her in derogatory terms," "pulled a kitchen knife out of a drawer and forcibly placed it in her hand, yelling at her to stab him with it," pulled a phone cord out of the wall when the victim was attempting to call 9-1-1 for help, and threw the victim against a bookshelf when she was attempting to leave her residence with her child. *Id.* at 318-19. The defendant was convicted of three crimes: (1) misdemeanor assault, for pulling the victim's head back and aggravating her neck injury; (2) menacing, for placing the victim in fear of imminent physical injury when he shook her and displayed a knife; and (3) felony fourth-degree assault, for throwing the victim against the bookshelf. *Id.* The trial court in *Witherspoon* concluded that the misdemeanor assault and the menacing occurred during the same criminal episode, but that the felony assault was part of a separate criminal episode. *Id.* at 319-20. Consequently, when sentencing defendant on the felony assault charge, it sentenced defendant on the sentencing guidelines grid block using a criminal history score that included both the misdemeanor assault and menacing convictions. *Id.*

We reversed, holding that, because the menacing and felony assault charges "arose from continuous and uninterrupted conduct by defendant that was joined in time, place, and circumstances," and that "shared a common criminal objective of harassing and injuring the victim through physical and emotional abuse," the "record d[id] not support the trial court's conclusion" that those charges constituted separate criminal episodes. *Id.* at 323-26.

In so holding, we recognized that when a defendant's initial criminal objective "continue[s] throughout the [criminal] episode," the addition of another objective does not support a conclusion that there were multiple criminal episodes. *See id.* at 325 ("[D]efendant may have acquired the additional objective in [their child's] bedroom \* \* \* to stop [the victim] from taking [their child] with her as she tried to flee from defendant, [but] defendant's earlier and ongoing

criminal objective to harass and abuse [the victim] con-
tinued throughout the episode."). Additionally, the "proper
application" of ORS 131.505(4) requires that we "focus on
[a defendant's] overarching criminal objective," notwith-
standing new criminal objectives that a defendant may
develop during the course of a criminal episode. *Id.* at 325
n 6 (the defendant's "conduct in ripping the telephone cord
out of the wall *** did, in fact, add a new criminal objective
to the criminal episode," however, "the addition of another
criminal objective does not detract from the focus on the
overarching criminal objective that is required"); *see also
State v. Kautz*, 179 Or App 458, 467, 39 P3d 937, *rev den*, 334
Or 327 (2002) (the "parsing of defendant's criminal objective
is inconsistent with the intent of ORS 131.505(4)").

          In this case, the state argues that "the crimes
within each pair of convictions for a particular deer were
not cross-related because *** each pair involved one con-
viction for possessing a deer in violation of wildlife laws and
another conviction for taking the deer in violation of wildlife
laws." According to the state, "[k]illing a deer and possess-
ing it are two different criminal objectives." Under the facts
of this case, we disagree with the state's parsing of defen-
dant's criminal objective. *See State v. Tooley*, 265 Or App
30, 40, 333 P3d 348, *rev den*, 356 Or 575 (2014) ("'[A] single
criminal objective' may encompass multiple related, though
distinct, criminal objectives; in particular, that is so when
*** the separate crimes are committed in service of an ulti-
mate and discrete criminal goal.").

          Here, the facts demonstrate that defendant's over-
arching criminal goal was to unlawfully take wildlife for his
own use. The killing and possession of the bucks were both
crimes "committed in service of [that] ultimate and discrete
criminal goal." *Id.*; *see also Witherspoon*, 250 Or App at 325
("[T]o accept that defendant's criminal objective changed
over the course of the [domestic] abuse would improperly
parse defendant's criminal objective."). Defendant's posses-
sion of the bucks furthered defendant's primary and over-
arching objective to unlawfully take state wildlife for his
own use. *See Tooley*, 265 Or App at 41 ("Two or more offenses
may be directed toward more than one criminal objective
and still be part of the same criminal episode, as long as

they reasonably can be seen to be directed toward a single overarching criminal objective." (Internal quotation marks omitted.)).

Because the conduct underlying Counts 1 and 7 for the 2016 buck and Counts 3 and 8 for the 2015 buck were each directed toward a common criminal objective, we conclude that the record does not support the trial court's conclusion that those groups of crimes were not each part of the same criminal episode. Moreover, as we explain in more detail below, the evidence suggests that defendant's conduct with respect to each set of charges was continuous, uninterrupted, and not separated by a sufficient pause, and the state offered no evidence to the contrary. Under the facts of this case and the law, defendant's conduct, as charged, of "taking" the bucks could have simultaneously reduced them to his "possession," and there is no evidence that defendant's possession of the bucks was not continuous. *See* ORS 496.004(16) (defining "take" as "to kill or obtain possession or control of any wildlife"); OAR 635-045-0002(53) (defining "possession" as "to have physical possession *or* to otherwise exercise dominion or control over any wildlife or parts thereof" (emphasis added)). Accordingly, we proceed to determine whether ORS 161.067(1) or (3) precluded merger in this case.

B.   *"Two or More Statutory Provisions" under ORS 161.067(1)*

ORS 161.067(1) provides, "When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations." Accordingly, ORS 161.067(1) authorizes separately punishable offenses only when three conditions are met: "(1) the defendant's actions qualify as the same conduct or criminal episode; (2) the defendant's actions violate more than one separate statutory provision; and (3) each separate statutory provision requires proof of an element that the other provision(s) do not." *Martinez v. Cain*, 366 Or 136, 145, 458 P3d 670 (2020). The remaining dispute under ORS 161.067(1) centers on whether the second requirement is met—*viz.*, whether "defendant's actions violate[d] more than

one separate statutory provision." *Id*. To determine whether that requirement is satisfied, "we must determine whether the legislature intended to create two crimes or only one." *State v. White*, 346 Or 275, 280, 211 P3d 248 (2009). In other words, "[w]hether two statutes (or two sections, subsections, or paragraphs of a statute) are 'separate statutory provisions' for the purposes of ORS 161.067 depends on whether the legislature intended to create two crimes as opposed to, for example, two ways of committing the same crime." *State v. Gensitskiy*, 365 Or 263, 283, 446 P3d 26 (2019).

In this case, in Counts 1 and 3, the state charged defendant with the unlawful "possession" of wildlife under ORS 498.002, ORS 496.992, and OAR 635-065-0765. In Counts 7 and 8, the state charged defendant with unlawful "taking" of wildlife under ORS 498.002, ORS 496.992, and OAR 635-065-0015. Both of the violations of rules adopted under the wildlife laws in this case stemmed from defendant's failure to purchase a hunting license and tags for the relevant hunting seasons.[5]

ORS 498.002(1) provides, in pertinent part, that "[n]o person shall angle for, take, hunt, trap or possess *** any wildlife in violation of the wildlife laws or of any rule promulgated pursuant thereto." ORS 496.992(1) provides that that conduct is a crime when accompanied by a culpable mental state. *See State v. Cho*, 297 Or 195, 202, 681 P2d 1152 (1984) (to commit a wildlife crime, a defendant must act with a culpable mental state, if not, it is a violation); ORS 496.992(1) ("[A] violation of any provision of the wildlife laws, or any rule adopted pursuant to the wildlife laws, is a Class A misdemeanor if the offense is committed with a culpable mental state."). Because it is undisputed

---

[5] OAR 635-065-0015(1) provides, "Any person hunting game mammals for which a tag is required must have on their person a valid tag for the dates, area and species being hunted." OAR 635-065-0765(2) provides, "When the owner of any game mammal tag kills a game mammal for which a paper tag is issued, the owner shall immediately validate the tag by writing on the tag, in ink, the date and time of harvest, and the Wildlife Management Unit where harvest occurred; and attach the tag in plain sight securely to the game mammal." Finally, OAR 635-065-0765(4) provides, "The required information, or paper game mammal tag, must be maintained in legible condition at all times. The tag shall be kept attached to such carcass or remain with any parts thereof so long as the same are preserved."

that the possession and taking crimes both implicate ORS 498.002(1), we must decide whether, by referencing the violation of any wildlife rule, the legislature intended to treat a person's taking and possession of wildlife as violating more than one statutory provision. For the following reasons, we conclude that the answer to that question is no.

In that regard, the Supreme Court's opinion in *State v. White*, 341 Or 624, 147 P3d 313 (2006), is instructive. In *White*, the court examined the first-degree burglary statute, ORS 164.225, and determined, based on the text of the statute, that the legislature had intended to create only one crime. After an incident in which the defendant had entered his former girlfriend's apartment and assaulted her, the defendant was convicted of two counts of first-degree burglary for (1) entering and remaining in a building with the intent to commit assault; and (2) entering and remaining in a building with the intent to commit menacing. *White*, 341 Or at 626-27. Looking at the "clear words of the statute," the court noted that the burglary statutes require "intent to commit *a* crime"—that is "any crime;" it is irrelevant what crime the defendant intends to commit. *Id.* at 640 (emphasis in original). For that reason, the court determined that the text of the statute did not "suggest a legislative intent to treat a single unlawful entry or remainder as violating more than one 'statutory provision' based on the burglar's intent to commit more than one crime inside the building." *Id.*

By its terms, ORS 498.002(1) defines a single crime if committed with a culpable mental state pursuant to ORS 496.992(1)—the unlawful angling, taking, hunting, trapping or possession of any wildlife. As noted, ORS 498.002 prohibits angling for, taking, hunting, trapping or possessing wildlife if the person does so in violation of "*any* [wildlife] rule." (Emphasis added.) *See White,* 341 Or at 640 (observing that the burglary statutes require intent to commit "any crime" and it is irrelevant what crime the defendant intends to commit, and concluding that the text of the statute did not "suggest a legislative intent to treat a single unlawful entry or remainder as violating more than one 'statutory

provision' based on the burglar's intent to commit more than one crime inside the building"). Under the express terms of ORS 498.002(1), angling for, taking, hunting, trapping or possessing wildlife becomes criminal when it is done with a culpable mental state and in violation of *any* wildlife rule, but, just as in *White*, that does not necessarily suggest that legislature intended to treat a single instance of unlawful taking and possession of wildlife as violating more than one statutory provision based on the defendant's intent to commit more than wildlife violation. *See Gensitskiy*, 365 Or at 283 (the use of a single section or subsection to define a crime is an indication that the legislature intended to define a single crime); *compare id*. at 283-84 (concluding "that the identity theft statute and the aggravated identity theft statute are separate statutory provisions" for purposes of merger under ORS 161.067(1) because they "are separate statutes, in which the legislature has defined crimes to which it has attached different names, classifications, and consequences") *with State v. Yong*, 206 Or App 522, 546, 138 P3d 37, *rev den*, 342 Or 117 (2006) (concluding that that the various forms of felony fourth-degree assault under ORS 163.160(3) do not constitute separate statutory provisions for purposes of merger). The text in context of ORS 498.002(1) indicates that the legislature intended to create one crime to punish persons who violate *any* wildlife law or rule when that violation of the rules involves angling for, taking, hunting, trapping, or possessing wildlife with a culpable metal state, *e.g.*, the unlawful acquisition of state property. *See* ORS 498.002(1) ("Wildlife is property of the state.").

The text of ORS 498.002(1) when viewed in the context of the other wildlife laws in ORS chapter 498 further reinforces that conclusion. *See State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012) (a statutes context includes "related statutes"). The legislature has enacted numerous separate statutory provisions that criminalize specific violations of the wildlife rules. For example, OAR 635-065-0745(3) provides that it is unlawful to "hunt any game mammal with dogs, except western gray squirrel." ORS 498.164 criminalizes that conduct in a more specific manner and provides, in pertinent part, that it is a Class A misdemeanor to "use

one or more dogs to hunt or pursue black bears or cougars." Likewise, OAR 635-065-0745(6) provides that it is unlawful to "cast from or within 500 feet of a motor vehicle an artificial light on game mammals, predatory animals or livestock while having in possession or immediate physical presence a weapon with which the game mammals or livestock could be killed." ORS 498.146(1) criminalizes that conduct, when the violation of that law is done with a culpable mental state pursuant to ORS 496.992(1). ORS 498.146(1) provides:

> "No person shall cast from a motor vehicle or from within 500 feet of a motor vehicle an artificial light upon any game mammal, predatory animal or livestock while there is in the possession or in the immediate physical presence of the person a weapon with which the game mammal, predatory animal or livestock could be killed."

Also pertinent to this analysis is OAR 635-065-0750(2), which provides, in part, that it is unlawful to "waste any game mammal or parts thereof." Again, the legislature has specifically criminalized that conduct under ORS 498.042(3) when the violation of that law is done with a culpable mental state pursuant to ORS 496.992(1). ORS 498.042(3) provides, "No person shall waste any edible portion of any game mammal, game bird or game fish or the pelt of any fur-bearing mammal." Thus, by criminalizing that specific conduct in a separate statutory provision, the legislature has expressed an indication that leaving an animal to waste is more egregious than making use of the game animal or parts thereof. In other words, by taking possession of the bucks, defendant did what he was otherwise lawfully required to do if he had taken the bucks with the appropriate tags. The purpose of ORS 161.067 is to ensure that a defendant's convictions "accurately portray the nature and extent of [the defendant's] conduct." *State v. Crotsley*, 308 Or 272, 276-77, 779 P2d 600 (1989).

Additionally, "Take" is defined as "to kill or obtain possession or control of any wildlife." ORS 496.004(16). As such, the definition of "take" allows for defendant's acts to constitute "two ways of committing the same crime" under ORS 498.002, which also indicates that the legislature did not intend to create separate statutory provisions when a

person takes and possesses wildlife in violation of any wild-life rule. *Gensitskiy*, 365 Or at 283.[6]

The fact that the legislature has enacted numerous separate statutory provisions that criminalize *specific* violations of the wildlife rules, including leaving a game animal to waste, strongly suggests that the legislature intended to create one crime under ORS 498.002(1) when a person violates any wildlife rule, and that violation involves angling for, taking, hunting, trapping, or possessing wildlife with a culpable mental state. Based on the text and context of ORS 498.002(1), we conclude that the legislature intended to create only one crime under ORS 498.002(1) when a person angles for, takes, hunts, traps, or possesses wildlife in violation of the wildlife laws or rules. Because we conclude that defendant's actions violated only one statutory provision, ORS 161.067(1) does not preclude merger of the guilty verdicts for defendant's taking and possession of wildlife. Accordingly, the trial court erred when it concluded that ORS 161.067(1) precluded merger of the guilty verdicts for defendant's violations of ORS 498.002(1) because defendant's conduct violated only one statutory provision.

C.   *"Sufficient Pause" under ORS 161.067(3)*

As relevant here, ORS 161.067(3) provides:

"When the same conduct or criminal episode *violates only one statutory provision* and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's

---

[6] "Hunt" is defined as "to take or attempt to take any wildlife by means involving the use of a weapon or with the assistance of any mammal or bird." ORS 496.004(10). "Trap" is defined as "to take or attempt to take any wildlife by means involving the use of a trap, net, snare or other device used for the purpose of capture." ORS 496.004(18). Thus, hunting and trapping are also "two [more] ways of committing the same crime" by unlawfully "taking" wildlife under ORS 498.002. *Gensitskiy*, 365 Or at 283; *see also* ORS 496.004(1) (defining "angle" as "to take or attempt to take a fish for personal use by means involving hook and line").

criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

(Emphasis added.)

"[T]o support the entry of multiple convictions for the same offense under ORS 161.067(3), one crime must end before another begins *and* each crime must be separated from the others by a sufficient pause in the defendant's criminal conduct to afford him an opportunity to renounce his criminal intent." *State v. West-Howell*, 282 Or App 393, 397-98, 385 P3d 1121 (2016), *rev den*, 361 Or 312 (2017) (emphasis in original). "The state, as the party asserting that defendant's conduct * * * is separately punishable for purposes of ORS 161.067(3), bears the burden of adducing legally sufficient evidence of the requisite sufficient pause." *State v. Nelson*, 282 Or App 427, 443, 386 P3d 73 (2016) (internal quotation marks omitted). "We are bound by the trial court's findings of fact—including the duration of a pause and what a defendant did during a pause—if there is constitutionally sufficient evidence in the record to support those findings." *Id*. "We review for legal error a trial court's ultimate ruling that a pause was sufficient to afford the defendant an opportunity renounce his criminal intent." *Id*.

Here, the trial court did not make any findings with respect to the duration of any pause or what defendant may have done during such a pause. The state contends that the taking and possession crimes "do not overlap at all," because "the crime of killing the deer began and ended before the crime of possessing the deer began" and "that pause was sufficient to preclude merger because, in the space of that pause, defendant was necessarily confronted with a dead deer—an intervening event sufficient to give defendant an opportunity to renounce any further criminal intent." We disagree; the evidence adduced by the state at trial and the law do not support the state's argument.

1.  *2016 Buck*

Based on the evidence of defendant's taking and possession of the 2016 buck, which, as noted, was entirely derived from Andrews's testimony and the state's exhibits at

trial, we conclude that the state failed to meet its burden of adducing legally sufficient evidence of the requisite sufficient pause. The state offered no evidence of a pause between the taking and possession of the 2016 buck. Rather, it appears that the state relies on an inference that the killing of the buck necessarily had to be separated in time from defendant's possession of the buck. But that inference is speculative, and it is not supported by the evidence or the law.

The evidence offered by the state in the form of defendant's Facebook posts shows that defendant posted a photograph holding two freshly severed deer legs and "what appear[ed] to be some blood wiped on his face." Andrews "believe[d] that it was a picture *** taken relatively soon after the animal was taken." Additionally, defendant posted another picture of the same "four by six" buck skull with the caption, "got this heavy horned four by six during rifle season," shot it "through the back of the neck [and the bullet came] out the front[,] *** [h]e was bedded down," I "slit his throat to seal the deal and killed [him in] late October." Thus, the evidence offered by the state indicates that defendant not only possessed the 2016 buck "relatively soon after the animal was taken," but also that defendant simultaneously killed and reduced it to his possession when he slit its throat.

Moreover, there is no evidence that defendant ever relinquished his possession of the 2016 buck in a way that would have created a sufficient pause in between his taking and possession of the buck. We have repeatedly held, albeit in different contexts, that the "fact of possession, for purposes of the criminal code, is a 'criminal act of a continuing nature.'" *State v. Cantrell*, 223 Or App 9, 12, 195 P3d 451 (2008) (quoting *State v. Boyd*, 271 Or 558, 570, 533 P2d 795 (1975)); *see Boyd*, 271 Or at 570-71 (possession of a stolen television and drugs); *State v. Nunes*, 268 Or App 299, 306-07, 341 P3d 224 (2014) (possession of a firearm). We see no reason to depart from that general rule in the context of criminal violations for the possession of wildlife.

Accordingly, we conclude that the state failed to meet its burden of adducing legally sufficient evidence of the requisite sufficient pause between defendant's taking and possession of the 2016 buck. Thus, the trial court erred

when it concluded that ORS 161.067(3) precluded merger of Counts 1 and 7.

    2.   *2015 Buck*

      The evidence adduced by the state with regard to defendant's taking and possession of the 2015 buck does not show what occurred in between defendant's taking and possession of the buck—let alone that there was a sufficient pause in between those acts. Moreover, as we touched on above, the definitions of take and possess allow for those two acts to occur simultaneously. "Take" is defined as "to kill or obtain possession or control of any wildlife." ORS 496.004(16). "Possession" is defined as "to have physical possession *or* to otherwise exercise dominion or control over any wildlife or parts thereof." OAR 635-045-0002(53) (emphasis added). Contrary to the state's assertion, physical possession is not required. Under the relevant definitions, the "taking" could have been both the killing and the possession of the 2015 buck, because the taking and possession could have occurred as soon as defendant exercised dominion or control over the buck by killing it. *See, e.g.*, *State v. Blake*, 348 Or 95, 101-03, 228 P3d 560 (2010) (concluding that a defendant cannot commit the offense of first-degree forgery without having sufficient control over the forged instrument so as to be deemed in possession of it); *State v. Haddon*, 286 Or App 191, 198, 399 P3d 458 (2017) (concluding that a person cannot fraudulently "use" a credit card under ORS 165.055 without also "possessing" it within the meaning of the identity theft statute, ORS 165.800, and observing that, "[w]hether a suspect had a credit card in his hand is immaterial," because "possession, in the context of the identity theft statute, includes both actual and constructive possession").

      Because the state did not adduce any evidence to prove that defendant's act of killing the 2015 buck did not also involve defendant simultaneously possessing the buck, or that there was any pause that separated those two acts, we also conclude that the trial court erred when it ruled that ORS 161.067(3) precluded merger of Counts 3 and 8.[7]

---

[7] We do not foreclose the possibility that, under some circumstances, the state could adduce sufficient evidence of a pause between a person's taking of

## III.   CONCLUSION

The trial court erred when it concluded that ORS 161.067(1) and (3) precluded merger of Counts 1 and 7 and Counts 3 and 8. Under the circumstances of this case, a single conviction for defendant's conduct of unlawfully taking the 2016 buck, and a single conviction for defendant's conduct of unlawfully taking the 2015 buck, "accurately portray[s] the nature and extent of [defendant's] conduct." *Crotsley*, 308 Or at 276-77.

Convictions on Counts 1 and 7 reversed and remanded for entry of conviction for one count of unlawfully taking wildlife; convictions on Counts 3 and 8 reversed and remanded for entry of conviction for one count of unlawfully taking wildlife; remanded for resentencing; otherwise affirmed.

---

wildlife and that person's possession of that wildlife to preclude merger under ORS 161.067(3).