EGAN, C. J.
*657 Youth appeals the juvenile court's judgment finding him within the jurisdiction of the court under ORS 419C.005 for committing an act that, if committed by an adult, would constitute possession of methamphetamine.[1] ORS 475.894.[2] Youth contends that the state failed to prove beyond a reasonable doubt that white residue found in a pipe he possessed was methamphetamine. For the reasons set out below, we agree with youth that the state failed to present sufficient evidence from which a reasonable trier of fact could find that the substance was methamphetamine. Therefore, we reverse and remand.
We are bound by the juvenile court's findings of fact so long as the record contains evidence supporting them, and we review the court's legal conclusions for errors of law. State v. J.N.S. , 258 Or.App. 310, 312, 308 P.3d 1112 (2013). In reviewing questions of the sufficiency of evidence, we must determine "whether a rational trier of fact, drawing reasonable inferences, could have found that the state proved the elements of the charged offense beyond a reasonable doubt." Id. at 320, 308 P.3d 1112. In doing so, we view the relevant facts in the light most favorable to the state. Id.
Youth was driving a vehicle carrying others when The Dalles Police Officer Lick stopped him for a traffic violation. Lick noticed that youth seemed "shaky," that his eyes were watery and bloodshot, and that his eyelids were droopy. Lick also noticed a strong odor of marijuana emanating from *1151 inside the vehicle. When Lick asked youth and his passengers about the marijuana, they all initially denied having any. However, while Lick was providing dispatch with youth's information, a second police officer, Fedunok, arrived. Youth told Fedunok that he wanted to "tell the truth" to Lick and that he had marijuana. He handed her a small bag containing marijuana. Lick then returned to youth's vehicle, seized the marijuana, and read youth his Miranda rights. *658 A third police officer, Waine, arrived on the scene to assist Lick for the duration of the stop. At some point thereafter, Lick arrested youth and transported him to a detention facility while Waine stayed at the scene to search youth's vehicle. During his search, Waine found a small glass pipe wrapped in a handkerchief underneath the driver's seat. There was a white residue inside the pipe. Waine contacted Lick to tell him about the pipe and, after finishing the vehicle search, took the pipe back to the police department.
After talking to Waine, Lick asked youth whether he "knew about the meth pipe under his *** seat." Youth "seemed shocked" and said no. Lick then asked youth, "if [he] were to fingerprint the pipe if [youth's] fingerprints would be on it[.]" Youth shook his head and said "yeah." Lick called dispatch to request that a drug recognition expert come assist with testing youth for driving under the influence of the suspected controlled substances. Youth refused to consent to the test the expert would have performed, but youth did consent to a urine test. Back at the police station, Lick performed a test on the substance in the pipe using a field test kit, to determine the presence and identity of an illicit substance.
The state filed a delinquency petition alleging that youth had engaged in conduct that, if committed by an adult, would constitute unlawful possession of methamphetamine, ORS 475.894, and unlawful possession of marijuana, former ORS 475.864(3) (2015), repealed by Or. Laws 2017, ch. 21, § 126. During the delinquency hearing, the state offered the results of the urine test and the field test as evidence, but both were excluded for lack of foundation regarding the scientific validity of the tests. Thus, to establish that the substance in the pipe was in fact methamphetamine, the state called Lick, Waine, and Fedunok to testify.
Lick testified that, based on his training and experience,[3] white residue, as seen in the pipe, could "usually be *659 identified with methamphetamine." Waine testified that, based on his training and experience,[4] the white residue "looked similar to what [he had] seen in the past as far as that residue" and that it "appear[ed] to be methamphetamine or something similar to that." Waine also testified that the residue was not consistent with marijuana because it did not smell like marijuana and because "marijuana pipes are more artistic, and there's like a burnt fiber residue inside, not a white residue[.]" Fedunok did not testify about the white substance. Rather, Fedunok said that, based on her training and experience,[5] the pipe itself "look[ed] like a methamphetamine pipe."
After the state presented its case, youth moved for a judgment of acquittal on the count of unlawful possession of methamphetamine. The juvenile court denied youth's motion, reasoning:
"I think there's evidence of an admission *** of possessing a meth pipe; an admission of having fingerprints on an object that he was told was a meth pipe. *** And I think a reasonable fact finder could find guilt or within jurisdiction of the court."
After closing arguments, the court found youth within the jurisdiction of the juvenile *1152 court for possessing marijuana and methamphetamine. The court explained:
"I give weight to the officers' lay opinion that the pipe appeared to be methamphetamine. I couple that with an admission from [youth] that an object described to him as 'a meth pipe under his seat,' he admitted by nodding that his fingerprints would be on it. And based on it being under the seat, he's the driver, the admission that his fingerprints would be on it, being described to him as a meth pipe that he's admitting to possessing it, the opinion testimony from at least two officers that the substance in the pipe appeared to be methamphetamine, I'm personally satisfied beyond a reasonable doubt[.]"
*660 Youth filed a motion to reconsider, arguing that the court erred in (1) denying youth's motion for judgment of acquittal and (2) finding that the state had proven the charge of unlawful possession of methamphetamine beyond a reasonable doubt. The juvenile court denied that motion.
As noted, youth's sole assignment of error is directed at the possession of methamphetamine count. Youth contends that the evidence was insufficient to establish one of the elements of the offense, namely, that the white substance in the pipe was methamphetamine. Therefore, youth asserts that the juvenile court erred in adjudicating him delinquent on that count. Specifically, youth argues that the officers' testimony that he shook his head and said "yeah" when asked whether his fingerprints would be on the pipe, along with their testimony that the substance "appeared" to be methamphetamine or looked like what "usually" is identified as methamphetamine, was not sufficient evidence from which a rational factfinder drawing reasonable inferences could have found that the substance was, beyond a reasonable doubt, methamphetamine. The state responds that the evidence was sufficient, and that additional evidence, such as scientific testing, was unnecessary in this case.
As noted above, at the hearing, the state did not present any direct evidence identifying the substance in the pipe. In proving the identity of a substance beyond a reasonable doubt, the state may properly rely on circumstantial evidence and reasonable inferences flowing from that evidence. See State v. Bivins , 191 Or.App. 460, 466, 83 P.3d 379 (2004) ("In establishing [an element of assault in the fourth degree], the state may rely on circumstantial evidence and reasonable inferences flowing from that evidence."). However, the state may not rely on evidence that requires speculation or guesswork. Id. at 467, 83 P.3d 379. The state's line of reasoning cannot make "too great an inferential leap," or require "the stacking of inferences to the point of speculation" to draw a particular conclusion. Id. at 468, 83 P.3d 379. The line between a permissible, reasonable inference and impermissible speculation is " 'drawn by the laws of logic.' " Id. at 467, 83 P.3d 379 (quoting Tose v. First Pennsylvania Bank, N.A., 648 F.2d 879, 895 (3d Cir.), cert. den. , 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981) ). Whether particular circumstantial evidence is sufficient to support a *661 particular inference is a legal question for a court to decide. Bivins , 191 Or.App. at 467, 83 P.3d 379.
We agree with youth that the state's evidence in this case falls on the side of impermissible speculation and is thus insufficient to support the inference that the substance inside of the pipe was methamphetamine. The Supreme Court has recognized that methamphetamine is "not self-identifying, as certain other substances might be," because something that appears to be a white substance could also be, "inter alia , cocaine, or heroin, or a harmless white crystalline substance." State v. Willis , 348 Or. 566, 573, 236 P.3d 714 (2010). Here, in attempting to prove the identity of the substance circumstantially, the state relied on youth's "admission" and the officers' testimony that was based on their training and experience. Youth contends that the state needed stronger evidence or results from a scientific test. The state argues that youth's "implicit admission," together with the officers' testimony that the substance in the pipe "appeared" to be methamphetamine, would allow a reasonable factfinder-here, the juvenile court-to conclude that the substance inside of the pipe was methamphetamine.
*1153 The state's line of logic is strained. First, with regard to youth's "admission," the state stacks inferences to the point of speculation. The state contends that a factfinder could infer from youth's interaction with Lick that (1) youth admitted to possessing a "meth pipe," and (2) a factfinder could infer from that admission that the substance inside of the pipe was methamphetamine. Viewing the evidence in the light most favorable to the state, we conclude that a reasonable factfinder could not make the leap to the second inference. When Lick asked if youth knew about the "meth pipe," youth seemed shocked and said, "No." Immediately after, Lick asked if youth's fingerprints would be found on "the pipe," and youth shook his head and said "yeah." While an "admission" to possessing the pipe is not the only inference a factfinder could make from this interaction between a 17-year-old boy and a police officer, it is a reasonable inference. However, the state's next inference-that youth's admission established the identity of the substance in the pipe-is not one which a reasonable factfinder could make. Importantly, we note that possession of a methamphetamine *662 pipe is not an act that the legislature has proscribed. And here, youth did not admit to having used the pipe to smoke methamphetamine, nor did youth give any other indication that the substance inside of the pipe was methamphetamine. In reasoning that youth's "implicit admission" to possessing the pipe supported the inference that the substance inside the pipe was methamphetamine, the state impermissibly stacks inferences to draw a speculative conclusion.
Second, we observe that the officers' testimony was equivocal as to whether the substance was methamphetamine. Lick stated that the substance in the pipe could "usually" be identified as methamphetamine. Waine stated that the substance in the pipe "looked similar" to what he had seen in the past, and "appeared" to be methamphetamine "or something similar." Waine distinguished the substance as inconsistent with marijuana, but he did not rule out other white substances that are more similar in appearance to methamphetamine. To conclude from those statements that the substance inside of the pipe was methamphetamine, a factfinder would essentially be required to infer that any pipe containing white residue is a pipe containing methamphetamine. As the Supreme Court has recognized that methamphetamine is not so self-identifying, such an inference is also impermissibly speculative. And, although it may be a reasonable inference that the substance was an illegal drug, ORS 475.894 requires identification of a specific drug.
Finally, Fedunok did not testify about the substance in the pipe, stating only that the pipe looked like a methamphetamine pipe. That testimony is problematic for reasons similar to youth's admission. That is, even accepting that the pipe was a "meth pipe," a factfinder could still not infer that the substance inside of the pipe was methamphetamine. The state had to present evidence beyond the nature of the pipe itself to identify the substance inside the pipe.[6]
In short, all of the evidence presented by the state to identify the substance in the pipe as methamphetamine requires speculation and too great an inferential leap. See *663 Bivins , 191 Or.App. at 468, 83 P.3d 379. Therefore, we agree with youth that the evidence is legally insufficient to permit a reasonable inference that the substance inside of the pipe was methamphetamine. We reverse the juvenile court's judgment finding youth within the jurisdiction of the court for possession of methamphetamine.
Adjudication for possession of methamphetamine reversed; remanded for further proceedings; otherwise affirmed.

Youth does not challenge the adjudication over him for conduct that, if committed by an adult, would constitute unlawful possession of marijuana. Former ORS 475.864(3) (2015), repealed by Or. Laws 2017, ch. 21, § 126.

ORS 475.894 has been amended since youth committed his act; however, because those amendments do not affect our analysis, we refer to the current version of the statute in this opinion.

At the time of the hearing, approximately one month after the traffic stop, Lick had been a police officer for less than a year, had conducted one prior driving under the influence ("DUI") investigation and had been involved in about 10, and had attended "multiple classes" regarding controlled substances. Lick explained that he often was able to identify controlled substances by consulting with other officers.

At the time of the hearing, Waine had been a police officer for three years, and had attended advanced DUI classes including a one-week training specific to identifying controlled substances in DUI investigations.

Fedunok had been a police officer for three years, and had gone through training at the police academy that included instruction on identifying controlled substances.

In so holding, we do not reach the issue of what kind of evidence would have been sufficient; rather, our conclusion is limited to the insufficiency of the evidence presented in this case.