EGAN, C. J.
*482 *493 Defendant appeals a judgment of conviction, after a bench trial, for five counts of identity theft, ORS 165.800,[1] assigning error to the trial court's denial of his motion for judgment of acquittal (MJOA). While in the custody of the Multnomah County Jail on a different charge, defendant used the jail telephone five separate times, and each time, the call was connected to the personal identification number (PIN) of another inmate. At trial, the state presented testimony identifying defendant's voice on the calls and establishing the jail rule of "one inmate per phone." Based on that evidence, the trial court denied defendant's MJOA and convicted defendant on all counts. On appeal, defendant argues that the trial court erred by denying his MJOA because the state did not present sufficient evidence from which a reasonable trier of fact could have found that he obtained, possessed, transferred, uttered, or converted the PINs to his own use. The state acknowledges that defendant did not "utter," "transfer," or "convert" the PINs "to his own use," but argues that a reasonable trier of fact could have found that defendant "possessed" or "obtained" them. We agree with the state and, therefore, affirm.
In reviewing the denial of a motion for judgment of acquittal, we state the facts in the light most favorable to the state. State v. Davies , 195 Or. App. 534, 536, 98 P.3d 757 (2004). Defendant violated a pretrial release agreement on a domestic violence charge. As a result, the trial court ordered him to await trial in the custody of the Multnomah County Jail and prohibited him from contacting K, the alleged victim in the domestic violence case. At the jail, telephone calls are monitored, logged, and recorded by a telephone system administered by a private contractor. While in jail, defendant spoke to K on five separate phone calls. The calls were not connected to defendant's PIN. Four of the calls were connected to one inmate's PIN, and one call was connected to a different inmate's PIN. Both of those inmates were housed in the same jail unit as defendant.
*494 During defendant's bench trial, the state called two employees from the Multnomah County Sheriff's Office (MCSO), Banta and Fleming, to explain how jail inmates make outgoing calls. Banta, a supervision deputy for pretrial services and former corrections deputy inside the jail, explained that there is either "a bank of phones where the inmates stand next to each other" or "the phones are located on poles that are in the center of the unit." Fleming, the records coordinator for MCSO, explained that "the rule is one inmate * * * for a phone" and that, if a deputy sees multiple inmates at a phone, they are "supposed to break it up." To make a call, Banta explained that inmates "dial an outgoing phone number and then they're required to enter a PIN, * * * and then follow the prompts all the way through." The PIN is a combination of an inmate's jail identification number and date of birth. At the beginning of the call, before the parties are connected, a recording informs inmates that calls are monitored and that they may receive disciplinary sanctions for permitting other inmates to use their PINs, and instructs inmates about how to proceed with the call. The state played portions of the five calls between K and defendant, and Banta was able to identify defendant's voice on each. No voices other than the recording, defendant, and K were heard on any of the calls.
At the close of the state's case, defendant moved for a judgment of acquittal on all counts, arguing that there was insufficient proof about the way the calls in question were placed for a trier of fact to find that *483 defendant committed identity theft under ORS 165.800(1).[2] That statute provides:
"A person commits the crime of identity theft if the person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person."
The trial court denied defendant's motion. On appeal, defendant again argues that the state presented insufficient evidence to establish that he committed "culpable acts" under *495 the statute, specifically, acts of "obtaining, possessing, transferring, uttering, or converting" other inmates' PINs for his own use. The state responds that the evidence sufficed to permit a reasonable trier of fact to find that defendant "obtained" or "possessed" the PINs.
When a defendant's challenge to the denial of an MJOA turns on the meaning of a statute, we review the trial court's construction of the statute for legal error. State v. Holsclaw , 286 Or. App. 790, 792, 401 P.3d 262, rev. den. , 362 Or. 175, 406 P.3d 610 (2017). "Then, based on the proper construction of the statute, we view the evidence in the light most favorable to the state to determine whether a rational factfinder could have found the elements of the offense beyond a reasonable doubt." Id.
Oregon appellate courts have previously construed parts of ORS 165.800(1) in State v. Ritter , 280 Or. App. 281, 380 P.3d 1160 (2016), and State v. Medina , 357 Or. 254, 355 P.3d 108 (2015). In Ritter and Medina , the crime was charged as "convert[ing] to the person's own use" the personal identification of another person, and our inquiry focused on that statutory term. Ritter , 280 Or. App. at 286, 380 P.3d 1160. As the dispute in this case is whether defendant "obtained" or "possessed" the personal identification of another under the statute, Ritter and Medina are not directly applicable. However, because Ritter is somewhat factually similar to this case, and because the statutory provision it interpreted also involves some exercise of "possession and control," it is helpful to begin by setting forth relevant parts of our discussion in that case.
The defendant in Ritter was an inmate when he "enlisted the help of his cellmate to place a call" to C, his girlfriend, whom he was prohibited by court order from contacting. 280 Or. App. at 284, 380 P.3d 1160. The cellmate entered his own PIN, stated his name to get past the verification requirement of the phone system, and dialed. "[W]hen C answered, the cellmate told her, 'Hold on a sec, ok? * * * Don't fuck it up though, okay? Please.' " Id. The defendant then took the telephone from the cellmate and talked with C. Based on that call, the state charged the defendant with identity theft. Id. On appeal, we explained:
*496 "[T]he parties' arguments focus on the narrow issue of whether, by taking over the telephone call that the cellmate made using his own PIN, defendant converted that PIN to his own use. The term 'converts to the person's own use' is not defined in ORS 165.800. However, the Supreme Court construed that phrase in Medina , 357 Or. at 271 [355 P.3d 108], concluding that, 'to convert another person's personal identification to his or her own use, a defendant must take, appropriate, or somehow divest the other person of their personal identification and, with the requisite intent, use that personal identification for the defendant's own purposes."
Id. at 286-87, 380 P.3d 1160 (emphasis in original). Because the Supreme Court did not explain what "appropriate" means, we continued our statutory analysis, eventually concluding that
"to 'appropriate' the personal identification of another person for the purpose of converting that personal identification to defendant's own use, and thereby committing identity theft, a defendant must take, acquire, or claim the personal identification of another person either by possessing or exercising some control over it ."
Id. at 287-88, 380 P.3d 1160 (emphasis added). We further concluded that the phrase *484 " 'converts to the person's own use,' and, by inclusion, the term 'appropriates,' " means "that the act is done without the permission or consent of the person identified by the personal identification." Id. at 288, 380 P.3d 1160.
We ultimately reversed the trial court's denial of the defendant's MJOA, because the record in Ritter contained "no evidence from which a rational trier of fact could find that defendant 'appropriated' his cellmate's PIN." Id. at 289, 380 P.3d 1160. In particular, there was "no evidence that defendant took or acquired the cellmate's PIN, claimed the PIN as his own, or ever possessed or exercised any control over the PIN." Id. Thus, the evidence supported "only the inference that defendant's cellmate willingly helped defendant by providing him with access to the telephone call that the cellmate himself made using his own PIN." Id. We rejected the state's argument that, by "taking over the call," defendant appropriated the PIN, because,
"even if defendant 'appropriated' the telephone call by taking it over from his cellmate, it does not follow that defendant *497 therefore appropriated the PIN that was required to initiate the call, much less converted that PIN to his own use within the meaning of ORS 165.800. Rather, defendant's cellmate gave defendant access to a benefit that the cellmate's use of his own personal identification provided him. Defendant did not appropriate that personal identification, just as a person who sits down in a friend's living room to watch a movie on an online video streaming service with the friend does not appropriate the personal identification that the friend used to log in to her account[.]"
Id. at 290, 380 P.3d 1160. In sum, we reversed the defendant's conviction, because the state presented insufficient evidence of "appropriation," or in other words, insufficient proof that the defendant took, acquired, or claimed the personal identification of another person by possessing or controlling it without the permission of the person it identifies. Id.
In this case, the parties' arguments focus on a separate, but similarly narrow issue: whether, by speaking on calls placed with other inmates' PINs, in a jail with a rule of "one inmate per phone," a factfinder could infer that defendant "possessed" or "obtained" the other inmates' PINs. "Possess" and "obtain" are not statutorily defined. However, the parties agree, and we concur, that the essence of both terms is the exercise of control. See Ritter , 280 Or. App. at 288, 380 P.3d 1160 (equating "possess" with "exercising some control over"). Indeed, the dictionary defines "possession" as "the act or condition of having in or taking into one's control or holding at one's disposal," and "obtain" as "to gain or attain possession or disposal of usu. by some planned action or method." Webster's Third New Int'l Dictionary 1770, 1559 (unabridged ed. 2002). The inquiry is similar to that in Ritter , where we were first concerned in part with whether the defendant had "exercised control over" his cellmate's PIN. However, because this case only involves whether defendant "possessed" or "obtained" other inmates' PINs, and not whether defendant "appropriated" the PINs "for his own use," our analysis stops at the question of control. In other words, because the state concedes that defendant did not "convert to his own use" the PINs, it is immaterial to our inquiry in this case whether defendant possessed the PINs without the permission of the person they identified.
*498 Turning to the facts of this case, we conclude that the record contains sufficient evidence from which a rational trier of fact could find, by making reasonable inferences, that defendant "possessed" or "obtained" the other inmates' PINs. Defendant argues that the state failed to show that defendant had control over the PINs, because the evidence does not show that defendant keyed in the PINs, knew the PINs, or that other inmates informed defendant of the PINs. Defendant points out that "it is possible for one inmate to enter his PIN and pass the phone to another inmate or leave the phone off its hook for another inmate to walk over and pick it up." The state, however, argues that because no voices other than defendant's and K's were heard on the phone calls, a reasonable factfinder could infer that defendant used the inmates' PINs to place the calls. Relatedly, the state contends that, in view of *485 the evidence that the jail has a rule of one inmate per telephone, which deputies enforce by "breaking up" inmates if they see them violating the rule, a reasonable factfinder could infer that defendant himself entered the PIN number, rather than one of the inmates. As explained below, we agree with the state.
The state did not present any direct evidence that defendant had control over the PINs of the other inmates. The state may properly rely on the circumstantial evidence in the record to conclude that a reasonable factfinder could infer from that evidence that defendant had control over the PINs. See State v. F. R.-S. , 294 Or. App. 656, 660, 432 P.3d 1149 (2018). However, the state may not rely on evidence that requires speculation or guesswork. State v. Bivins , 191 Or. App. 460, 467, 83 P.3d 379 (2004). "The line between a permissible, reasonable inference and impermissible speculation is drawn by the laws of logic." F. R.-S. , 294 Or. App. at 660, 432 P.3d 1149 (internal quotation marks omitted). We agree with the state that the evidence, along with the reasonable inferences flowing from the evidence, is sufficient to support the finding that defendant had control over, and thus "obtained" and "possessed" the other inmates' PINs. Although not the only reasonable inferences on this record, the state's asserted inferences are reasonable, and do not make too great an inferential leap to be speculative. Defendant made five different telephone calls under PINs that were not his *499 own. Defendant's and K's voices were the only voices on each call. The jail rule is that only one inmate is allowed at each phone. From that evidence, viewed in the light most favorable to the state, a reasonable factfinder could infer that, in order to speak on the calls, defendant had to have exercised control over the other inmates' PINs.
Affirmed.

ORS 165.800 was amended after defendant was charged; however, because the changes are not material to this appeal, we refer to the current version of the statute.

ORS 165.800 was amended after defendant was charged. However, as those amendments have no affect on the outcome of this case, we refer to the current version of the statute in this opinion.