No. 279          April 2, 2025          427

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRETT DANIEL FUNRUE,
*Defendant-Appellant.*

Deschutes County Circuit Court
23CR12100, 22CR55955, 22CR61547, 23CN02013,
23CN01297; A181557 (Control), A181935, A181936,
A181937, A181958

Michelle A. McIver, Judge.

Submitted February 25, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Rolf C. Moan, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Convictions on Counts 3 and 4 reversed and remanded for entry of conviction for one count of second-degree forgery; remanded for resentencing; otherwise affirmed.

## JACQUOT, J.

In this consolidated criminal appeal, defendant raises seven assignments of error. Following a jury trial, defendant was convicted of identity theft, ORS 165.800 (Count 1); second-degree theft, ORS 164.045 (Count 2); second-degree forgery, ORS 165.007 (Count 3); and second-degree criminal possession of a forged instrument, ORS 165.017 (Count 4). For conduct related to his theft and forgery convictions, defendant was also found in violation of probation regarding two prior cases and in contempt for violating a restraining order.[1] Defendant contends that the trial court erred in (1) failing to merge a guilty verdict for possession of a forged instrument and a guilty verdict for forgery; (2) failing to inquire into defendant's complaint about court-appointed counsel; (3) requiring defendant to wear a leg restraint during trial; and (4) denying his motion for a judgment of acquittal (MJOA) on the identity theft charge. In his fifth through seventh assignments of error, defendant asserts that the reversals he seeks on appeal necessitate reversal of the contempt and probation violation charges. Regarding the first assignment of error, we reverse and remand for resentencing; for the reasons outlined below, we otherwise affirm.

We briefly summarize the facts related to defendant's conviction for theft and forgery crimes as provided by the parties. Defendant lived on the property of an 84-year-old relative for one year. Defendant's relative customarily received a $150 personal check every three months, often placed in his mailbox. Defendant testified that he received one of those checks from his relative and that it was signed over to him. The relative testified that he did not give the check to defendant, did not sign it over and did not give defendant permission to cash the check. Defendant cashed the check at a bank and was subsequently arrested.

We begin by addressing defendant's first assignment of error, in which he contends that the guilty verdict on Count 3, second-degree forgery, should have merged with the guilty verdict on Count 4, second-degree criminal possession of a forged instrument. Defendant notes that he

---

[1] In a separate case which defendant does not appeal, he admitted to violating a restraining order.

did not raise the issue at sentencing and requests that we review for plain error. The state concedes the error, and we agree with and accept the state's concession.

We have discretion whether to review unpreserved arguments for plain error. *State v. Vanornum*, 354 Or 614, 630, 317 P3d 889 (2013). "For an error to be plain[,] it must be an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *Id.* at 629. We review the sentencing court's determination whether multiple guilty verdicts merge into a single conviction for errors of law. *State v. Barton*, 304 Or App 481, 483, 468 P3d 510 (2020).

ORS 161.067(1) provides: "When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations." Thus, for offenses arising from a single "criminal episode" or acts constituting "the same conduct," a defendant may only be punished for multiple offenses separately if the episode or conduct (1) constitutes more than one statutory violation and (2) each statutory violation requires "proof of an element that the others do not." ORS 161.067(1); *see State v. Blake*, 348 Or 95, 97, 228 P3d 560 (2010) (analyzing merger of one count of first-degree forgery and one count of first-degree criminal possession of a forged instrument).

The parties agree that the charges against defendant for second-degree forgery and second-degree criminal possession of a forged instrument arose from the same conduct or criminal episode; both charges involved the same check. Defendant's conduct also violated two statutory provisions: ORS 165.007, which provides, in part, "(1) A person commits the crime of forgery in the second-degree if, with intent to injure or defraud, the person: * * * (b) Utters a written instrument which the person knows to be forged," and ORS 165.017, which provides in part, "(1) A person commits the crime of criminal possession of a forged instrument in the second-degree if, knowing it to be forged and with intent to utter same, the person possesses a forged instrument."

Thus, we turn our attention to whether "each statutory provision [requires] proof of an element that the other does not." *Blake*, 348 Or at 98. Applying the Supreme Court's analysis of first-degree possession of a forged instrument and first-degree forgery, and considering the text of ORS 165.007 and ORS 165.017 for the second-degree offenses, we conclude that the guilty verdicts should have merged.[2] *Blake*, 348 Or at 99-103.

Second, we address defendant's argument that the trial court erred by failing to inquire into defendant's complaint about his court-appointed counsel. The parties dispute preservation with regard to defendant's complaint about counsel.

The transcript shows that on the first day of trial, defendant expressed dissatisfaction with his counsel several times, including frustration about questions defendant wanted to be asked during *voir dire* and frustration because he wanted his parents called as witnesses even though his attorney disagreed. The court informed defendant that it was not appropriate for him to speak out of turn and, separately, provided defendant several opportunities to address the trial court directly.

Before trial resumed on the second day, defendant stated: "There's a conflict of interest between [defense counsel] and I. I want to make that clear from yesterday." The court instructed defendant not to speak out of turn and made other statements about trial management. Soon after, defendant again spoke up, saying, "[M]y attorney just told me to shut the fuck up. I don't appreciate that from attorneys." The court provided defendant a chance to speak about his concerns before the jury was seated. Defendant spoke about an orange he brought to court, his military service, and other individuals. He did not raise any additional concerns about his attorney or request substitute counsel.

We review a trial court's denial of a criminal defendant's motion for substitution of counsel for abuse of

---

[2] The second-degree offenses we address now contain nearly identical language to the first-degree offenses analyzed by the *Blake* court; the first-degree offenses contain provisions regarding certain types of instruments (*e.g.* money, deed) and instruments of a certain purported value or amount (*e.g.* $1,000 or more). 348 Or at 99-103.

discretion. *State v. Langley*, 314 Or 247, 258, 839 P2d 692 (1992), *adh'd to on recons*, 318 Or 28, 861 P2d 1012 (1993) (*Langley I*). In the instant case, it is not clear that defendant moved for substitution of counsel, but we determine that the abuse of discretion standard is nonetheless applicable. *See State v. Johnson*, 340 Or 319, 348, 131 P3d 173, *cert den*, 549 US 1079 (2006) (applying the abuse of discretion standard to review of a factually similar circumstance).

A defendant in a criminal case has a constitutional right to adequate counsel under the Sixth Amendment to the United States Constitution and Article I, section 11 of the Oregon Constitution. *State v. Langley*, 351 Or 652, 663, 273 P3d 901 (2012). However, "that right is not to appointed counsel of the defendant's own choosing." *Id.* (citing *United States v. Gonzalez-Lopez*, 548 US 140, 151, 126 S Ct 2557, 165 L Ed 2d 409 (2006)). Adequate counsel includes "adequate performance by counsel of those functions of professional assistance which an accused person relies upon counsel to perform on [their] behalf." *Id.* A trial court has discretionary authority to replace a defendant's appointed counsel with substitute counsel, yet a defendant has no right to substitution "in the absence of a legitimate complaint concerning the one already appointed." *Langley I*, 314 Or at 257-58 (internal quotation marks omitted). A "legitimate complaint" is one that rests "on an abridgement of a criminal defendant's constitutional right to counsel. *** A simple loss of confidence or disagreement with counsel's approach to matters of strategy is not cause to substitute one appointed lawyer for another." *Id.* at 258.

Assuming without deciding that defendant's concern regarding counsel is preserved, we determine that the trial court did not err. Nothing in the record suggests that defendant's dissatisfaction with his counsel extended beyond a "simple loss of confidence or disagreement with counsel's approach to matters of strategy." *Id.* Although defendant used the phrase "conflict of interest," nothing suggests that defendant was using it as a legal term of art or with regard to anything other than *voir dire* questions, which witnesses to call, and similar strategic disagreements, nor that the

trial court should have understood defendant's concerns to arise from a legitimate complaint.[3]

A trial court has discretionary authority to inquire into concerns raised by criminal defendants, such as concerns about whether counsel's performance is constitutionally adequate. *See State v. Smith*, 339 Or 515, 524-27, 529, 123 P3d 261 (2005) (summarizing several cases where the trial court inquired into a defendant's concerns about counsel, indicating that such an inquiry is acceptable and may resolve issues when a complaint about counsel is well-taken). However, "nothing in the text of the federal or state constitutional provisions, or in any controlling case law that we have found, suggests that a trial court [is always required] to make an inquiry or factual assessment *during trial* into a defendant's complaint" about counsel. *Id.* at 527 (further noting that post-conviction procedures provide one avenue for defendants to protect their state and federal constitutional rights by allowing challenges to the adequacy of counsel) (emphasis in original). On these facts, the trial court had no affirmative duty to inquire into defendant's concerns about counsel, and the court did not err by not doing so.

Third, we turn to defendant's argument that the trial court erred by requiring him to wear a leg restraint during trial. "This court reviews a trial court's order requiring that a defendant wear a restraint during trial for an abuse of discretion." *State v. Osborn*, 315 Or App 102, 107, 500 P3d 61 (2021). In conducting that review, we "examine the trial court record to determine if there is evidence providing a particularized basis to require a defendant to wear restraints." *Id.* at 108. "Oregon has long recognized the 'right of an accused to be free from physical restraint during a criminal trial.'" *State v. Steltz*, 259 Or App 212, 215, 313 P3d 312, *rev den*, 354 Or 840 (2014) (citing *State v. Wall*, 252 Or App 435, 437, 287 P3d 1250 (2012), *rev den*, 353 Or 280 (2013)) (recognizing both common law and constitutional underpinnings, including Article I, section 11 of the Oregon

---

[3] Furthermore, on appeal defendant does not argue that there was a conflict of interest in the legal sense, rather, defendant argues that the asserted error "was harmful as a matter of law because it is impossible to tell if the outcome of the trial would have been different had the complaints been legitimate and had the trial court appointed substitute counsel."

Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution).

Restraining an individual during trial may infringe one's right "to be [presumed] innocent until the contrary is proved," under ORS 136.415, and may also impact one's decision to take the stand or inhibit a defendant's ability to consult with counsel. *Wall*, 252 Or App at 438; *see also State v. Kessler*, 57 Or App 469, 472, 645 P2d 1070 (1982) (noting that appearing without restraints affords a defendant the opportunity to appear innocent, with "dignity, and self-respect"); *State v. Long*, 195 Or 81, 91, 244 P2d 1033 (1952) (recognizing that restraints can impact a defendant's "mental faculties[,] thereby-materially [abridging and prejudicing] his constitutional rights of defense"). The use of restraints "without substantial justification is a ground for reversal." *State v. Moore*, 45 Or App 837, 839-40, 609 P2d 866 (1980). However, "if there is evidence of an immediate and serious risk of dangerous or disruptive behavior," a trial court has discretion to impose restraints. *Id.* at 839.

Defendant argues that his state and federal constitutional rights were violated by the imposition of restraints, because the record did not support the requisite finding that defendant posed an immediate and serious risk of dangerous or disruptive behavior. In the alternative, defendant contends that even if the trial court did not err by requiring some form of restraint, the court abused its discretion by delegating authority to jail staff to determine the method of restraining defendant. The state contends that defendant did not preserve his argument that the trial court improperly delegated authority to jail staff.

Both defendant and the state cite *State v. Merrell*, 170 Or App 400, 12 P3d 556 (2000), *rev den*, 331 Or 674 (2001), to support their arguments. In *Merrell*, we determined that the trial court did not err by imposing restraints on the defendant, noting the defendant's "history of assaultive conduct, *** his history of flight, and his previous plan to escape by force."[4] *Id.* at 406. The state argues that defendant's history

---

[4] The record showed that the defendant had developed and described to others an escape plan involving use of force, he had previously been terminated from a treatment center for swinging a stick around and damaging property, he was

of conduct was similar to that of the defendant in *Merrell*. However, defendant contends that his history and behavior differ such that he did not pose "an immediate and serious risk of dangerous or disruptive behavior." *Id.* at 402.

During a pretrial hearing regarding whether to require defendant to wear restraints in the courtroom, defendant argued that after expressing himself in a way that displeased jail staff, he was retaliatorily placed in restraints at the jail. Defendant argued that he had not been violent towards or physically attacked jail staff, and that a prior conviction against defendant for third-degree escape should not be a ground for imposing restraints, because defendant believed he had a right to leave at the time of the offense.[5] Defendant also raised concerns about prejudice if restraints were to be viewed by the jury while defendant stands to relieve back pain or if he chooses to testify. The state argued that restraints were proper, citing defendant's conviction for escape and prior offenses involving violence, such as fourth-degree assault, menacing, and resisting arrest. The sheriff's office submitted documentation requesting the imposition of restraints during all of defendant's court appearances due to a history of disruptive behavior, destruction of property, and other conduct. We note that the sheriff's office described verbal threats made by defendant toward jail staff but did not allege incidents of force against staff or other individuals in the facility. The trial court decided to "allow[] corrections to use whatever restraints they think are appropriate for the trial," based on the information provided by the sheriff's office, but it assured that it would shield visibility of restraints from jurors to the extent possible.

Defendant was restrained with a leg brace throughout trial, and there is no contention that the brace was visible to jurors. During trial, defendant complained that the brace impacted his ability to focus and that it made a popping noise when he transitioned between sitting and

---

found in possession of a firearm in violation of his probation, he was "youth[ful] and athletic," and the sheriff's office was understaffed and thus only one deputy would be present in the courtroom. *Id.* at 405.

[5] Defendant also notes that third-degree escape does not include an element of force or threat of force, citing ORS 162.145(1), which provides: "A person commits the crime of escape in the third degree if the person escapes from custody."

standing. Defendant expressed to the court that the leg restraint caused him anxiety, impacted his ability to have good etiquette, and diminished his character.

As noted, we review a trial court's decision about restraints for an abuse of discretion. *Osborn*, 315 Or App at 107. When reviewing for an abuse of discretion, we do not determine whether, sitting in the shoes of the trial court, we would make the same ruling; rather, our role is to determine whether the trial court came to a legally permissible choice among the range of options. *State v. Romero*, 236 Or App 640, 643-44, 237 P3d 894 (2010). "[H]owever, [if] a trial court's purported exercise of discretion flows from a mistaken legal premise, its decision does not fall within the range of legally correct choices." *Id.* "Although a sheriff's deputy or a prosecutor may provide helpful and necessary information in order to assist in the assessment of the risk posed by an unrestrained defendant, the trial court may not simply accept the conclusions of others; it must make an independent determination that restraint is justified." *Wall*, 252 Or App at 439.

Given the record available to the trial court—including that defendant had been convicted of escape a few months earlier, that he had been convicted of assault, resisting arrest, and menacing, and that there was evidence of him refusing to return razors to jail staff—we cannot say that the court abused its discretion in deciding to require restraints.

However, the court did err in delegating authority to jail staff to determine the type and manner of restraint to use. If restraints are necessary, the court must ensure to limit the extent to which restraints impact the defendant's appearance while in court and any impact a particular type might have on the defense. Excessive restraint of a defendant during trial presents an "affront to human dignity." *Kessler*, 57 Or App at 472 (citing *People v. Duran*, 16 Cal 3d 282, 545 P2d 1322 (1976)). A court must not unnecessarily undermine a defendant's opportunity to be "brought before the court with the appearance, dignity, and self-respect of a free and innocent [person]." *Id.* (internal quotation marks omitted). Because, as the Supreme Court has recognized,

restraints not only implicate constitutional protections but may also impact a defendant's mental engagement—as appears may have been the case for defendant—a trial court should not defer any aspect of the judicial decision-making to another, and any recommendation by jail staff as to the type of restraint should be independently considered by the court. *See, e.g.*, *Long*, 195 Or at 91-92 (describing the myriad impacts that restraints may have on a defendant, including to one's physical and mental faculties, and emphasizing the importance of exercising *judicial* discretion). However, here, given that the record shows that a nonvisible device— regarded as one of the less restrictive options—was used, we cannot say that the court's error in delegating responsibility to jail staff to select the restraint prejudiced defendant such that it requires reversal.

Fourth, we address defendant's preserved assertion that the trial court erred by denying his MJOA on the identity theft charge. We understand defendant's argument to be that because there is no evidence that he pretended to be someone other than himself, he did not contravene ORS 165.800. The state asserts that the MJOA was properly denied and that the evidence allowed a jury to find that defendant had violated the identity theft statute.

"When a defendant's challenge to the denial of [a motion for a judgment of acquittal] turns on the meaning of a statute, we review the trial court's construction of the statute for legal error." *State v. Connolly*, 296 Or App 492, 495, 439 P3d 481, *rev den*, 365 Or 533 (2019). Based on the proper construction of the statute, we then "view the evidence in the light most favorable to the state to determine whether a rational factfinder could have found the elements of the offense beyond a reasonable doubt." *Id.* (internal quotation marks omitted). To interpret a statute, we analyze its text and context to discern the legislature's intent. ORS 174.020; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We also consider legislative history to the extent that it is useful. ORS 174.020(1)(b); *State v. Gaines*, 346 Or 160, 172-72, 206 P3d 1042 (2009).

The plain text of ORS 165.800 is at odds with defendant's argument. Based on its text, the elements of the offense

are that the person, (1) with intent to deceive or defraud; (2) obtains, possesses, transfers, creates, utters, or converts; (3) to the person's own use, the personal identification of another. ORS 165.800.[6] Violation of ORS 165.800 does not require passing oneself off as another person. Rather, it criminalizes obtaining or possessing personal identification of another with the intent to *use that identification* to defraud or deceive.

As indicated by use of the conjunction "or," an individual may violate ORS 165.800 if they act with *either* intent to deceive or defraud. Intent to "deceive" within ORS 165.800 means "deception for the purpose of obtaining any unwarranted advantage." *State v. Medina*, 357 Or 254, 264, 355 P3d 108 (2015). "Defraud," in this context, means to obtain something of value through misrepresentation. *Id.* at 262. Nothing in the text of the statute suggests that the deception or fraud must involve impersonating or passing oneself off as another person. *See* ORS 165.800.

Turning to the second element, again, the use of "or" indicates that the legislature intended to criminalize conduct consisting of any one of the listed actions: obtains, possesses, transfers, creates, utters, or converts. ORS 165.800 contains no definition of each action. Nor does the legislative history address them. *Medina*, 357 Or at 261-62. Thus, we look to the ordinary meaning of those terms. *Id.* at 259 (so stating). We focus our analysis on "obtains" and

---

[6] ORS 165.800 provides, in part:

"(1) A person commits the crime of identity theft if the person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person.

"* * * * *

"(4)(a) 'Another person' means an individual, whether living or deceased, an imaginary person or a firm, * * * or other private or public entity.

"(4)(b) 'Personal identification' includes, but is not limited to, any written document or electronic data that does, or purports to, provide information concerning:

"(A) A person's name, address or telephone number;

"* * * * *

"(H) The identifying number of a person's depository account as a 'financial institution,'

"(I) A person's signature or a copy of a person's signature[.]"

"possesses" as the actions most relevant to the evidence of defendant's conduct, without commenting on the applicability of the other listed actions. "Obtain" means "to gain or attain possession or disposal of usu. by some planned action or method." *Webster's Third New Int'l Dictionary* 1559 (unabridged ed 2002). Relevant definitions for "possess" include "to be in possession of (something) : to have and hold as property *** to take into one's possession : to seize or gain control of : to make one's own." *Id.* at 1770.

The syntax of the statute indicates that "obtains" or "possesses" refers to "the personal identification of another," and the statute defines "personal identification of another" to include an individual's bank account number. ORS 165.800.

The record contains ample evidence that defendant took into his possession, seized, gained control of, or made his own, a check drafted by another person to his relative. That check contained, along with other personal identification, a bank account number belonging to someone other than defendant. Defendant does not contest that he cashed the check. The evidence, including attestations both by the drafter of the check and defendant's relative, that defendant was not given the check or permission to use or cash it, was sufficient to allow a jury to find that defendant acted with an intent to either deceive or defraud. Thus, we conclude that the trial court did not err in denying his MJOA.

Defendant's remaining assignments of error, contending that the contempt and probation violations must be reversed, are contingent on our having reversed his convictions for forgery and theft. Given our disposition, those arguments fail. Nonetheless, "resentencing on *all* convictions that form part of that package is required on remand." *State v. Zolotoff*, 275 Or App 384, 394, 365 P3d 131 (2015) (emphasis in original).

Convictions on Counts 3 and 4 reversed and remanded for entry of conviction for one count of second-degree forgery; remanded for resentencing; otherwise affirmed.