780 March 18, 2026 No. 201

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JASON ISAAC DEMBY,
aka Jason Isaihia Demby,
*Defendant-Appellant.*

Multnomah County Circuit Court
23CR24763; A183840

Christopher J. Marshall, Judge.

Submitted February 5, 2026.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kelsey T. Townsend, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Emily N. Snook, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

In this criminal case, defendant appeals his judgment of conviction for second-degree unlawful use of mace, assigning error to the trial court's denial of his motion for judgment of acquittal (MJOA). Defendant argues that the state provided insufficient evidence that the substance he sprayed constituted mace as defined in ORS 163.211(2), because the state relied on eyewitness testimony rather than evidence of the chemical makeup of the substance. We affirm.

When reviewing the denial of an MJOA, we view the evidence "in the light most favorable to the state to determine if the state presented sufficient evidence from which a rational trier of fact, making reasonable inferences, could find the essential elements of the crime beyond a reasonable doubt." *State v. Hedgpeth*, 365 Or 724, 730, 452 P3d 948 (2019) (citations and internal quotation marks omitted). We recite the facts in accordance with that legal standard.

At a Goodwill store in Portland, defendant sprayed D, a security guard, and J, the assistant manager, with a substance that caused immediate physical discomfort, including impaired vision, coughing, and difficulty breathing. For that conduct, the state charged defendant with second-degree unlawful use of mace, ORS 163.211.[1] At defendant's bench trial, the state presented eyewitness testimony from D and J describing their experiences of being sprayed in the store, as well as testimony from the police officer who responded to the scene.

D described feeling "a burning sensation," stating the spray went "everywhere" and made it difficult to see or breathe. J similarly described feeling "an extreme burning situation" and an inability to see. While J and D were the only people in the store who were sprayed directly, J reported that other people in the store were "coughing and having symptoms." Both J and D had to receive assistance to move away from the area, because they were unable to do so independently. D believed the substance was mace and thought

---

[1] Defendant was also charged with one count of third-degree escape, ORS 162.145, of which a jury found him guilty. Defendant does not contest that charge.

that the spray was orange in color. Both witnesses described the canister as being a few inches tall with a handle.

Upon arrival at the Goodwill store, Officer Budey observed that D was "drenched" in the substance and that J's face was red. He testified that "you could smell" the substance in the room and "kind of taste it in your mouth," describing the smell and taste as similar to "hot pepper," and said that "you involuntarily start coughing" just from being there. Budey took a still photograph from the store's surveillance video but did not collect any physical evidence, including the clothing that had been sprayed, nor did he submit any evidence of chemical testing. In fact, the state did not present any evidence at all as to the substance's chemical composition.

Defendant moved for judgment of acquittal, arguing that the testimonial evidence alone was insufficient to support his convictions because the state had not produced any evidence of the chemical composition of the substance he discharged. He contended that the legislature's choice to define mace by reference to specific chemical ingredients and properties indicated an intent to require proof of the substance's chemical makeup to establish the crime of second-degree unlawful use of mace.

The trial court disagreed, reasoning that while the state's evidence would have been stronger if it had retrieved the cannister or performed a chemical analysis on the impacted clothing, "they're not required to do that." The trial court denied defendant's motion and found him guilty of second-degree unlawful use of mace. This appeal followed.

The question presented in this case is whether ORS 163.211(2) requires evidence of the chemical composition of mace for a conviction of second-degree unlawful use of mace. To determine the meaning of a statute, we look to the legislature's intent, as evidenced by the text and context of the statute and any legislative history that is useful to the analysis. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

*Text*. The plain text of ORS 163.211(2) does not require the state to present evidence of the chemical composition of a substance to prove it is mace.

ORS 163.211(2) defines mace as:

"*** a sternutator, lacrimator or any substance composed of a mixture of a sternutator or lacrimator including, but not limited to, chloroacetophenone, alpha-chloroacetophenone, phenylchloromethylketone, orthochlorobenzalmalononitrile, oleoresin capsicum or a chemically similar sternutator or lacrimator by whatever name known, or phosgene or other gas or substance capable of generating offensive, noxious or suffocating fumes, gases or vapor or capable of immobilizing a person."

The statutory subsection begins with listing a sternutator or a lacrimator as possible types of mace.[2] Next, the phrase "including, but not limited to" before the list of chemical substances conveys "an intent that an accompanying list of examples be read in a nonexclusive sense." *State v. Kurtz*, 350 Or 65, 75, 249 P3d 1271 (2011). That means that although the listed substances may establish the existence of mace, they are not the only substances that do. After listing the specific examples, the statute provides that mace also includes *any* "substance capable of generating offensive, noxious or suffocating fumes, gases or vapor or capable of immobilizing a person."

Thus, the statute's plain text lacks any requirement of scientific proof of the substance's chemical makeup. Rather, the text provides that mace includes a sternutator, lacrimator, or some combination of both, and *could* include the listed chemical substances as well as any other substance capable of generating offensive, noxious or suffocating gases.

*Context*. The context of ORS 163.211(2) further supports the interpretation that the state is not required to prove by chemical testing that a substance is mace. Context includes, as relevant to this case, statutes on the same or a related subject. *State v. Klein,* 352 Or 302, 309, 283 P3d 350 (2012) (a statute's context includes "related statutes").

---

[2] *See Webster's Third Int'l Dictionary* 2239 (unabridged ed 2002) (defining "sternutator" as "an agent that induces a flow of nasal secretion or causes sneezing"); *id*. at 1262 (defining "lacrimator" as "a tear-producing substance").

Other related statutes demonstrate that when the legislature intends chemical analysis to be required, it says so explicitly. Oregon's DUII statute provides that a person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while having "0.08 percent or more by weight of alcohol in the blood of the person *as shown by chemical analysis* of the breath or blood of the person." ORS 813.010(1)(a) (emphasis added). In the DUII context, proof by anything other than a chemical analysis of breath or blood cannot be offered to prove a defendant's blood alcohol content (BAC). *State v. O'Key,* 321 Or 285, 307-08, 899 P2d 663 (1995) (holding that the results of a horizontal gaze nystagmus (HGN) test could not be offered as proof of BAC because it did not involve a chemical analysis); *State v. Ross*, 147 Or App 634, 639, 938 P2d 797 (1997) ("If evidence other than that derived from chemical tests were admissible under ORS 813.010(1)(a), then the state could prove its charge with that evidence, thereby negating the legislature's intention that the standard of culpability for that statute be a quantified blood alcohol content unrelated to perceptible impairment").

Here, there is no such language in ORS 163.211(2) indicating the legislature's intent to require proof of the chemical composition of mace. *See Oregon Business Planning Council v. LDLC*, 290 Or 741, 749, 626 P2d 350 (1981) (holding that because one statute expressly authorized affected cities to request a hearing to contest enforcement orders, the legislature's omission of similar hearing language elsewhere reflected a deliberate choice).

*Legislative History.* The legislative history does not speak to this question. ORS 163.211 was enacted in 1995 as part of the creation of new offenses for the use of electric stun guns and mace. Or Laws 1995, ch 651, § 1. The legislative discussion focused primarily on the charge of assaulting a public safety officer and which positions should be included within that definition. *See, e.g.*, Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2234, Feb 8, 1995, Tape 190, Side A (statement of Rep Floyd Prozanski). The legislature did not focus on the definition of mace during this discussion.

Considered together, the text, context, and legislative history of ORS 163.211(2) reflect the legislature's intent to allow proof of mace through evidence of the substance's effects, not only through its chemical composition.

*Application.* Given that evidence of the chemical composition of the substance was not required, a rational trier of fact, making reasonable inferences, could rely on the eyewitness testimony to find the essential elements of second-degree unlawful use of mace beyond a reasonable doubt. In proving the identity of a substance, the state may properly rely on "circumstantial evidence and reasonable inferences flowing from that evidence." *State v. F. R.-S.*, 294 Or App 656, 660, 432 P3d 1149 (2018) (citing *State v. Bivins,* 191 Or App 460, 466, 83 P3d 379 (2004)). At trial, the witnesses testified that the spray caused a "burning sensation" in their eyes and chest and created fumes throughout the store that caused others to cough. Additionally, both victims had to receive assistance to move away from the area, because they were unable to do so independently. That testimony provided sufficient circumstantial evidence to prove that defendant discharged mace within the meaning of ORS 163.211(2). Thus, a rational trier of fact could find the essential elements of second-degree unlawful use of mace beyond a reasonable doubt from the eyewitness testimony alone, and the trial court did not err in denying defendant's MJOA.

Affirmed.